UNITED STATES, Appellee

v

JAMES S. MULHERN, Private, U. S. Army,
Appellant

21 USCMA 507, 45 CMR 281

Captain *Leland M. Stenehjem, Jr.*, argued the cause for Appellant, Accused. With him on the brief were Colonel *George J. McCartin, Jr., Colonel Arnold I. Melnick, Lieutenant Colonel Joseph E. Donahue, Captain Richard A. Cooper,* and Captain *Barry K. Duwe.*

Captain *Glenn R. Bonard* argued the cause for Appellee, United States. With him on the brief were Colonel *David T. Bryant, Lieutenant Colonel Ronald M. Holdaway, Captain David E. Wilson,* and Captain *Richard L. Menson.*

## Opinion of the Court

QUINN, Judge:

This appeal challenges the correctness of the Court of Military Review's action on the question of the accused's mental responsibility for commission of the offense of which he was convicted.

Sunday, December 7, 1969, was the accused's day of disaster. At different times, between 3:30 a.m. and 6:30 a.m., several sergeants and a lieutenant attempted to arouse him from sleep so that he could report for kitchen police duty. Their efforts were unsuccessful. Later in the morning, the company commander appeared at the unit's office. He was in mufti and had come "to sign out" on leave in order to attend a funeral. Learning about the difficulty with the accused, he went to the barracks and undertook personally to awaken him. Although he managed to awaken the accused sufficiently to be recognized, he got no satisfactory "responses." Accordingly, he returned to the orderly room to prepare charges against the accused.

Despite a contrary recommendation by the battalion commander, six charges were eventually referred to trial before a general court-martial. These included disrespect to the com-manding officer, willful disobedience of an order given by him, and assault upon one of the sergeants who had previously failed to get the accused to report to kitchen police.[1] At trial, the accused was acquitted of all charges, but that of disrespect, and was sentenced to a bad-conduct discharge, confinement for six months, and accessory penalties.

Nothing in the record of the proceedings at the trial level suggested that the accused was other than mentally responsible for his conduct. At the trial, he responded directly and appropriately to questioning by the trial judge as to his understanding of the right to counsel and to trial by court-martial composed of court members as distinguished from trial by military judge alone, which he had elected. The accused also testified in his own behalf. His testimony was coherent and reflected an unimpaired ability to recall the past and respond rationally to the present. However, during the course of appellate review, which included remand by this Court to the Court of Military Review for further proceedings, United States v Mulhern, 20 USCMA 680 (1971), new matter as to the accused's sanity was

---

[1] The sergeant testified that when he tried to awaken the accused, the accused "did not wake up" although he made mumbling sounds. Cold water was poured on the accused, and he "swung" one of his arms, and "his hand came up" and struck the sergeant in the "fat of the leg." The sergeant maintained that he "didn't want to put" the incident on the charge sheet, which he was preparing under the commanding officer's direction, but the commander "said it would go in there." See United States v Cave, 17 USCMA 153, 37 CMR 417 (1967).

presented. The Court of Military Review concluded that the new matter raised "no issue of appellant's mental responsibility at the time of the offense," and it adhered to its earlier affirmance of the findings of guilty and the sentence. The accused now contends, in the language of paragraph 124 of the Manual for Courts-Martial, United States, 1969 (Revised edition), that the new matter "raises an issue concerning mental responsibility at the time of the offense," and the court was, therefore, bound to order a rehearing by a court-martial on the question of his sanity.

In United States v Triplett, 21 USCMA 497, 45 CMR 271, decided this date, we reviewed the courses of action open to the Court of Military Review in a situation of the kind presented by this case. We pointed out that the submission to the court of new matter indicating the absence of mental responsibility at the time of the offense, does not automatically "raise an issue" requiring that a rehearing be held by a court-martial. Rather, the court must evaluate the evidence, with the scope of the evaluation depending upon whether the new matter is before the court as evidence pertaining to the merits or before it only for the limited purpose of determining whether further proceedings are required. Appellate defense and Government counsel apparently agree that the post-conviction material was before the court for a limited purpose.

The new matter before the Court of Military Review consisted of three items. Two were reports by Major A. R. Bolmann, a psychiatrist at Valley Forge General Hospital, which reviewed the circumstances of the offense, as related by the accused, and his general conduct and background. Dr. Bolmann concluded that the accused suffered from an acute "severe case of Obsessive-Compulsive Neurosis." He indicated that the accused's "normal controls were poor," and, on occasion, were "insufficient" so that he would engage in "irrational behavior"

disproportionate to the event that "triggered" it. In his opinion, the accused, at the time of the offense, could not distinguish between right and wrong and was unable to adhere to the right. The third item was the report of a psychiatric evaluation of the accused by a sanity board convened at Valley Forge General Hospital. The board's diagnosis of the accused was "Obsessive Compulsive Personality, chronic, moderate." The board noted that the accused's father believed that the accused at times did not know right from wrong, but it was of the opinion that the "examples" furnished by the father, which it did not detail, were "more consistent with immature, impulsive acts" than they were "the product of a serious mental illness." Difficulties of conduct previously experienced by the accused were perceived as related to an unyielding stubborness. The accused was determined to be free of any "major mental illness" that would deprive him of the ability to know right from wrong and adhere to the right. However, the board postulated that a "combination of alcohol, fatigue and a general feeling of illness and nausea," from which the accused suffered at the time of the offense, "interfered to a significant degree" with his ability to adhere to the right in regard to the offense charged.

As we pointed out in *Triplett*, the existence of a difference in psychiatric opinion in the post-conviction matter presented to an appellate tribunal is not, in and of itself, sufficient to require rehearing as to the accused's sanity. The tribunal must analyze the content and determine the weight of the respective psychiatric opinions.

Dr. Bolmann's report indicates that he predicated his opinion, at least in part, upon the accused's indication that he did "not have any recollection" of using the disrespectful language set out in the specification of the charge. It is apparent from this reference that Dr. Bolmann was concerned with the exchange between the accused

**509**

and the company commander in the barracks. The trial transcript indicates that shortly after the conversation in the barracks, the accused reported to the Charge of Quarters' room and again spoke to the commanding officer. His trial testimony indicates that he was completely oriented to that conversation and that he had full recollection of it. He admitted that he used profanity in speaking to the commander, and he admitted uttering "those exact words" alleged in the specification. Thus, the accused's trial testimony as to his ability to recall, and his admission of utterance of the words charged, substantially lessen the weight of Dr. Bolmann's conclusions.

Considering the record as a whole, it is not so demonstrative of mental incapacity at the time of the offense as to indicate that "a different verdict might reasonably result if the issue [of the accused's sanity] was again presented to a court-martial." United States v Triplett, supra, page 503. We conclude, therefore, that the Court of Military Review did not err in denying the accused's application for a rehearing under the provisions of paragraph 124 of the Manual.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge DARDEN concurs.

Judge DUNCAN dissents.