UNITED STATES, Appellee,

v.

Captain Frank L. KING, 474–52–6874,
United States Army, Appellant.

CM 442194.

U.S. Army Court of Military Review.

12 June 1987.

For Appellant: Captain Joseph Tauber, JAGC (argued); Colonel Brooks B. La Grua, JAGC, Lieutenant Colonel Joel D. Miller, JAGC, Captain Stewart C. Hudson, JAGC (on brief).

For Appellee: Captain Eva M. Novak, JAGC (argued); Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Captain Denise K. Vowell, JAGC (on brief).

Before DeFORD, WILLIAMS, and KENNETT, Appellate Military Judges.

## OPINION OF THE COURT
## ON REMAND

DeFORD, Senior Judge:

The appellant was convicted contrary to his pleas by a general court-martial convened at Fort Ord, California, during the months of September through November of 1981 of carnal knowledge, sodomy (two specifications), conduct unbecoming an officer and gentleman (seven specifications), and obstruction of justice in violation of Articles 120, 125, 133 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 925, 933 and 934 [hereinafter UCMJ], respectively.

His approved sentence included dismissal from the service, confinement for fourteen years, and forfeiture of all pay and allowances. The convening authority approved the sentence as adjudged.

Pursuant to Article 66, U.C.M.J., 10 U.S.C. § 866, this court, on 31 August 1983, set aside the findings of guilty and dismissed one sodomy specification and three of the specifications of conduct unbecoming an officer and gentleman, reduced the confinement to ten years and otherwise affirmed the findings and sentence. *United States v. King*, 16 M.J. 990 (A.C.M.R. 1983).

Subsequently, the appellant petitioned the United States Court of Military Appeals for a grant of review alleging for the first time he was insane at the time of the commission of the offenses for which he was convicted. Appellant further moved that his case be remanded to this court for consideration of that issue. Government appellate counsel did not oppose the motion; and, on 5 March 1984, the United States Court of Military Appeals granted the motion. *United States v. King*, 17 M.J. 403 (C.M.A.1984) (summary disposition).

Thereafter, appellate defense counsel filed a motion requesting that this court order a formal sanity board, which the court did order on 13 April 1984.[1] The Sanity Board[2] was convened at the U.S. Disciplinary Barracks, Fort Leavenworth, Kansas, on 29 May 1984 and unanimously found that: (a) at the time of the alleged offenses, as a result of mental disease or defect, the appellant did lack substantial capacity to appreciate the criminality of his conduct and to conform his conduct to the requirements of the law; (b) at the time of trial, the appellant did possess sufficient mental capacity to understand the nature of the proceedings against him, but did not possess sufficient mental capacity to conduct or cooperate intelligently in his defense; and, (c) at the present time, the appellant does possess sufficient mental capacity to understand the nature of the proceedings and to intelligently conduct or cooperate in his appeal. The board provided no reasons for their opinion. The Sanity Board's opinion was reviewed by a Colonel Shaw, MC, Psychiatry and Neurology Consultant, Office of the Surgeon General, Department of the Army.[3] In addition, Colonel Shaw reviewed a letter dated 11 January 1984 by LTC M.E. Levine, M.D. (a member of the Sanity Board), which stated the appellant suffered from "Atypical Bipo-

---

1. Copies of the court's order directing the formal sanity board, the Report of the Sanity Board, dated 1 June 1984, in response thereto, as well as the endorsement by the Office of the Surgeon General, Department of the Army, are included as Appendix 1 to this opinion.

2. The Sanity Board included three senior medical officers. The president was the Commander of the Munson Army Hospital. The two remaining officers were psychiatrists. One of the psychiatrist members of the Board was Lieutenant Colonel Matthew E. Levine, M.D., MC, then Chief of Psychiatry, U.S. Disciplinary Barracks,

Fort Leavenworth, Kansas, who had treated appellant in an inmate status and who had advised appellate defense counsel by letter on "11 Jan. 1984" of his view that appellant was insane.

3. We note that the mentioned endorsement from the Office of the Surgeon General was not signed "FOR THE SURGEON GENERAL" as required by paragraph 9–10(b), Section II, Chapter 9 of AR 340–15, dated 1 January 1979. We nevertheless assume Colonel Shaw's endorsement was in behalf of the Surgeon General.

lor Disorder" and a "Mixed Personality Disorder." Colonel Shaw's endorsement of the sanity board's report stated, *inter alia:*

4. A review of the record of trial fails to indicate any evidence that would suggest that subject suffered from a psychiatric condition at the time of the alleged offense of such severity or to suggest a substantial impairment in his capacity to appreciate the criminality of his conduct or in his capacity to conform his conduct to the requirement of the law. Nor is there any indication that subject "did not possess sufficient mental capacity to conduct or cooperate intelligently in his defense."

5. The Sanity Board fails to establish the evidence upon which they have arrived at their current findings. They fail to establish a connection between subjects [sic] current psychiatric condition and his mental state at the time of the alleged offenses. The existance [sic] of a diagnosis of "Atypical Bipolar Disorder" does not preclude mental responsibility nor does its existance [sic] now warrent [sic] an assumption that subject was so psychotic at the time of the alleged offense as to suggest substantially impaired mental responsibility.

Government appellate counsel then filed a Motion for a Limited Hearing to determine facts relevant to the appellant's sanity under the authority of *United States v. DuBay,* 37 C.M.R. 411 (C.M.A.1968) [hereinafter referred to as a *DuBay* hearing]. Defense appellate counsel opposed the motion. Following oral argument, this court, on 29 November 1984, directed such a hearing be held.

The *DuBay* hearing was convened at Fort Leavenworth, Kansas, on 24 January 1985 and continued thereafter for nine days in the months of March, April, and June 1985. The order[4] of this court directed, in addition to specific questions to listed witnesses, that three basic questions be answered:

a. Whether sufficient post-trial evidence on the matter of appellant's mental

responsibility exists to warrant an order to rehear the issue *de novo* or other appropriate action. *United States v. Roberts,* 18 M.J. 192 (CMA 1984); *United States v. Triplett,* 21 U.S.C.M.A. 495, 45 C.M.R. 271 (1972); *United States v. Wimberly,* 16 U.S.C.M.A. 3, 36 C.M.R. 159 (1966).

b. Whether, considering all the matters on the issue of appellant's mental responsibility, a different verdict might reasonably result if the issue was again presented to a court-martial. *United States v. Triplett, supra.*

c. Whether appellant lacked the mental capacity to defend himself at trial. *United States v. Roberts,* 18 M.J. at 195 (Everett, C.J., concurring in the result).

Eleven witnesses were called by the defense and seven were called by the prosecution. After hearing the eighteen witnesses produced in an adversarial setting during the *DuBay* hearing, the military judge entered findings of fact and conclusions of law as required by this court's order. His conclusions of law were:

a. [T]here has been insufficient post-trial evidence concerning the accused's mental responsibility to warrant the trial of the issue *de novo*. *United States v. Martin,* 19 M.J. 621 (A.C.M.R.1984).

b. Considering all the evidence on the matter, a different verdict would not reasonably result if the issue were presented to a new court-martial.

c. At his original trial and throughout the *DuBay* hearing, CPT Kind [sic] did not lack mental capacity to understand the nature of the proceedings against him nor to conduct or cooperate intelligently in his defense or presentation of his case.

Appellate defense counsel now contend the post-trial evidence of appellant's lack of mental responsibility mandates a rehearing because: (1) this court erred in ordering a limited hearing since sufficient post-trial evidence existed indicating appellant's lack of mental responsibility; and (2) the mili-

---

4. The order of this court, dated 29 November 1984, is included as Appendix 2 to this opinion.

tary judge's findings of fact and conclusions of law were unsupported by the evidence adduced at the *DuBay* hearing.

Government appellate counsel disagree and, with regard to this court's order directing the *DuBay* hearing, call our attention to *United States v. Roberts*, 18 M.J. 192 (C.M.A.1984), approving of such procedure. They further allege the military judge's findings at the *DuBay* hearing were amply supported by the evidence of record and should be adopted by this court.

Military law in the past has accorded a "preferred rating" to questions affecting an accused's (appellant's) sanity. *United States v. Triplett*, 45 C.M.R. 271, 277 (C.M. A.1972); *United States v. Burns*, 9 C.M.R. 30 (C.M.A.1953).

 Where, as here, the issue of sanity is raised for the first time on appeal, this court is not free to decide the issue of mental responsibility. We may only determine whether the new information obtained after trial raises an issue concerning mental responsibility at the time of the offense; and, if that issue is raised, then this court must direct either dismissal of the charges or a rehearing. *United States v. Roberts*, 18 M.J. at 195 (Everett, C.J., concurring in the result); *United States v. Triplett*, 45 C.M.R. at 277. On the other hand, we may decide the issue of mental capacity to stand trial, when appropriate. *Roberts*, 18 M.J. at 195 (Everett, C.J., concurring in the result).

It must be recognized that in circumstances such as those here, the information before the court is not evidence even though it was, to a great degree, developed at the *DuBay* hearing heretofore mentioned. Consequently, our determination is limited to deciding if the issue is raised. If it is, we must then permit the disputed facts and opinions to be tested in the crucible of examination at trial. *United States v. Triplett*, 45 C.M.R. at 277; *United States v. Thomas*, 32 C.M.R. 163, 168 (C.M. A.1962).

Paragraph 124, MCM, 1969,[5] provides:

124. ACTION BY CONVENING OR HIGHER AUTHORITY. After consideration of the record as a whole, if it appears to the convening or appropriate higher authority that a reasonable doubt exists as to the sanity of the accused, the findings of guilty affected by that doubt should be disapproved and appropriate action taken with respect to the sentence. If the doubt relates to mental capacity at the time of trial, a rehearing may be directed when the incapacity no longer exists.

Convening or higher authorities will take the action prescribed in 121 before taking action on the record of trial when it appears from the record or otherwise that further inquiry as to the mental condition of the accused is warranted in the interest of justice, regardless of whether the question was raised at the trial or how it was determined if raised. When further inquiry results in a determination that the accused lacks the mental capacity to understand the review proceedings, a conviction may not be approved or affirmed under Articles 64, 65, or 66 until the accused regains the requisite mental capacity. However, this should not cause a delay in making a determination in favor of an accused which will result in the setting aside of a conviction. *When further inquiry after trial produces new information which raises an issue concerning mental responsibility at the time of the offense, the affected charges and specifications may be dismissed and appropriate action taken on the sentence or a new trial or rehearing may be directed, as may be appropriate under the circumstances of the case.*

(Emphasis supplied).

 The foregoing paragraph was construed in *Triplett* to determine what is meant by the language, "... new information which raises an issue concerning mental responsibility at the time of the offense,...." There, the court said the lan-

5. The rules of law set forth in the Manual for Courts-Martial, United States, 1969 (Revised edition) [hereinafter M.C.M., 1969], are applicable to the appellant's case.

778

guage and purpose of the foregoing paragraph does not command a rehearing on the "mere presentation of new information" as to the accused's mental responsibility for the offense, nor does it have the expansive scope of raising an issue at trial. *Cf.* M.C.M.1969, para. 122*a*. All relevant matter pertaining to the accused's sanity must be evaluated by the appellate tribunal. The mere existence of conflicting opinion does not per se warrant a rehearing or new trial. The standard to be applied is whether, considering all matter on the issue, a different verdict might reasonably result if the issue was again presented to a court-martial. *United States v. Triplett*, 45 C.M.R. at 277; *accord, United States v. Roberts*, 18 M.J. at 194; *United States v. Mulhern*, 45 C.M.R. 281, 284 (C.M.A.1972).

As we have noted, appellant challenges this court's authority to order a *DuBay* hearing to determine facts and information concerning the sanity issue. That question, however, was clearly decided in *United States v. Roberts*, 18 M.J. at 193, 194, and we need not address it further.

We now turn to the primary issue before us, that is, whether, considering all matters on the issue, a different verdict might reasonably result if the issue were again presented to a court-martial. We note that the information before the court is fraught with conflicting opinions. The principal members of the sanity board essentially believed the appellant was suffering from a bipolar disorder (manic depressive disorder) with psychotic episodes. All members of the board were of the opinion that appellant could not control his behavior that resulted in the charged offenses, nor could he intelligently cooperate with his counsel at trial.

Two members of the sanity board were of the opinion that appellant was competent as of the date of the sanity board and the *DuBay* hearing to participate in the appellate proceedings. The president of the board had no opinion as to the appellant's mental competency as of the date of the *DuBay* hearing. The appellant and his attorney indicated at the *DuBay* hearing there was no issue as to the appellant's mental competency at that time.

The record establishes that a bipolar disorder is one of the most difficult of psychiatric diagnoses. The manic and depressive stages of such an illness can last for intermittent periods of time including years and, further, can be interrupted by intermittent periods of normalcy. Apparently, proper diagnosis of such a disease requires treatment and study of one suffering from such an ailment over an extended length of time.

The testimony of appellant's two attorneys indicates his behavior during their preparation for his trial was extremely unusual and bizarre. It could be construed as self-destructive. Doctor Roy Auerbach, a civilian psychologist who spent considerable time treating appellant prior to the original trial and who testified in behalf of the prosecution, believed the appellant was suffering from a cyclothymic disorder (a lesser form of a bipolar disorder) classified as a personality disorder. He also noted that appellant could possibly suffer from a manic depressive disorder (a bipolar disorder) and was a "basket case" at the original trial. Doctor Auerbach also had grave doubts concerning appellant's ability to assist in his defense although he advised appellant's attorneys that appellant was sane.

Other witnesses, some of whom were psychiatrists or psychologists, who were associated with the appellant during the time of commission of the offenses for which he was convicted believed the appellant was sane but nevertheless described behavior which was bizarre and could be construed as consistent with the mental disease determined by the Sanity Board.

The military judge's findings of fact and conclusions of law at the *DuBay* hearing are instructive but are not controlling. We need not determine whether those findings of fact and conclusions of law were unsupported in the record. As we have noted, the responsibility rests upon this court to determine whether considering all relevant matter on the issue, a different verdict might reasonably result if the issue was presented to a court-martial. *United States v. Triplett*, 45 C.M.R. at 277.

Our evaluation of the total quantum of relevant evidence and information

before the court is that there is sufficient matter to raise the issue of insanity and that a different verdict might reasonably result if the issue was presented to a court-martial. *United States v. Triplett*, 45 C.M.R. at 277. We believe the conflicting facts, circumstances, evidence, and other relevant information should be tested in the crucible of examination at trial before a properly constituted finder of fact. Accordingly, under these circumstances, we are required to set aside the findings of guilty and the sentence and either authorize a rehearing or dismiss the charges. Dismissal of the charges is only appropriate if the government accedes to the dismissal or this court determines that the evidence of sanity at a rehearing would clearly be insufficient to sustain the prosecution's burden of proof on the issue and consequently there would be no valid reason to continue litigation of that issue. *United States v. Roberts*, 18 M.J. at 195; *United States v. Triplett*, 45 C.M.R. at 277; *United States v. McCray*, 18 M.J. 760, 762 (A.C.M.R.1984). Dismissal of the charges is inappropriate here.

The findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.

Judge WILLIAMS and Judge KENNETT concur.

### APPENDIX 1

### UNITED STATES ARMY COURT OF MILITARY REVIEW

Before HANSEN, SU–BROWN and BADAMI, Appellate Military Judges.

UNITED STATES, Appellee

v.

Captain FRANK L. KING,

SSN 474–52–6874,

United States Army, Appellant

CM 442194

### ORDER

WHEREAS, in the opinion of the Court, upon consideration of appellant's Motion Requesting Sanity Board, filed 2 April 1984, good cause to order the convening of a board of medical officers has been shown, it is, by the Court, this day,

ORDERED:

1. That proceedings be instituted by proper authority to convene a board of at least three medical officers to inquire into the mental capacity of the appellant herein at the time of the alleged offenses, at the time of the trial, and at the present time.

2. That a copy of the record of trial and allied papers be made available to the board of medical officers.

3. That the board make separate and distinct findings in accordance with the pertinent, general procedures as outlined in paragraphs 121 and 124, Manual for Courts-Martial, United States, 1969 (Revised edition), with respect to the following questions:

a. Did the appellant, at the time of the alleged offense, as a result of mental disease or defect, lack substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law? *See United States v. Frederick*, 3 M.J. 230 (CMA 1977).

b. Did the appellant, at the time of trial, possess sufficient mental capacity to understand the nature of the proceedings against him and to conduct or cooperate intelligently in his defense? *See* paragraph 120*d* and 121*c*, Manual for Courts-Martial, United States, 1969 (Revised edition).

c. Does the appellant, at the present time, possess sufficient mental capacity to understand the nature of the proceedings and to intelligently conduct or cooperate in his appeal? *See* paragraphs 120*d* and 121*c*, Manual for Courts-Martial, United States, 1969 (Revised edition).

d. If the appellant does not at the present time possess sufficient mental capacity to understand the nature of the proceedings or to intelligently conduct or cooperate in his appeal, at what time may a change in the appellant's mental condition

be expected, and what form of change is anticipated?

4. That upon completion of the foregoing inquiry, the report of the board of medical officers and related papers, including the record of trial, be transmitted to The Surgeon General of the Army for his review and opinion.

5. That upon completion of said review, the file will be returned to the Office of the Clerk of Court, United States Army Judiciary, and appellate defense counsel shall file any additional pleadings desired within ten (10) days following said receipt. Appellate government counsel shall file a reply to such pleadings within thirty (30) days after receipt of those pleadings filed by the defense or notice of intention not to file further pleadings.

## DEPARTMENT OF THE ARMY
### UNITED STATES DISCIPLINARY BARRACKS
### US ARMY COMBINED ARMS CENTER
### FORT LEAVENWORTH, KANSAS 66027

ATZL–DBM–H 1 June 1984

SUBJECT: Sanity Board – Captain Frank L. King, 474–52–6874

THRU: Surgeon General
 (DASG–PSC–F)
 Washington, D.C.

TO: Clerk of Court
 U.S. Army Court of Military Review
 NASSIF Building
 Falls Church, Virginia 22041

In accordance with the order of the United States Army Court of Military Review of 13 April 1984, a Sanity Board was convened on 29 May 1984 at the United States Disciplinary Barracks for the purpose of inquiring into the mental condition of Captain Frank L. King, SSN: 474–52–6874.

The Board was composed of:

Colonel John L. Strefling, D.O., M.D.
Chief, CMHA
Fort Leavenworth, Kansas 66027

L.C. Matthew E. Levine, M.D.
Chief, Psychiatry Division
United States Disciplinary Barracks
Fort Leavenworth, Kansas 66027

Colonel Lowman E. Gober, M.D.
Commander, MEDDAC
Fort Leavenworth, Kansas 66027

The findings of the Board are as follows:

a. At the time of the alleged offenses, as a result of mental disease or defect, the appellant did lack substantial capacity to appreciate the criminality of his conduct and to conform his conduct to the requirements of the law.

b. At the time of trial, the appellant did possess sufficient mental capacity to understand the nature of the proceedings against him, but did not possess sufficient mental capacity to conduct or cooperate intelligently in his defense.

c. At the present time, the appellant does possess sufficient mental capacity to understand the nature of the proceedings and to intelligently conduct or cooperate in his appeal.

/s/ John L. Strefling
 JOHN L. STREFLING, D.O., M.D.
 Colonel, MC
 Chief, Community Mental Health
 Fort Leavenworth, Kansas 66027

/s/ Matthew E. Levine
 MATTHEW E. LEVINE, M.D.
 Lieutenant Colonel, MC
 Chief, Psychiatry Division, USDB
 Fort Leavenworth, Kansas 66027

/s/ Lowman E. Gober
LOWMAN E. GOBER, M.D.
Colonel, MC
Commander, MEDDAC
Fort Leavenworth, Kansas 66027

DASG–PSC–F (16 Apr 84) 3d Ind
SUBJECT: Order for Psychiatric Examination

19 Jun 84

HQDA (DASG–PSC–F), Washington, DC 20310

 TO: US Army Court of Military Review, Nassif Building, ATTN: Mary Dennis, Falls Church, VA 22041

1. The Sanity Board of 1 Jun 84, record of the trial and available data were reviewed reference Captain Frank L. King, 474–52–6874.

2. The findings of this board state that subject at the time of the alleged offenses lacked "substantial capacity to appreciate the criminality of his conduct and to conform his conduct to the requirements of the law;" that "at the time of the trial" subject "did not possess sufficient mental capacity to conduct or cooperate intelligently in his defense."

3. In correspondence, 11 Jan 84, Mathew E. Levine, M.D. had indicated that subject suffered from "Atypical Bipolar Disorder" and "Mixed Personality Disorder."

4. A review of the record of trial fails to indicate any evidence that would suggest that subject suffered from a psychiatric condition at the time of the alleged offense of such severity or to suggest a substantial impairment in his capacity to appreciate the criminality of his conduct or in his capacity to conform his conduct to the requirement of the law. Nor is there any indication that subject "did not possess sufficient mental capacity to conduct or cooperate intelligently in his defense."

5. The Sanity Board fails to establish the evidence upon which they have arrived at their current findings. They fail to establish a connection between subjects current psychiatric condition and his mental state at the time of the alleged offenses. The existence of a diagnosis of "Atypical Bipo-

lar Disorder" does not preclude mental responsibility nor does its existence now warrant an assumption that subject was so psychotic at the time of the alleged offense as to suggest substantially impaired mental responsibility.

6. The Sanity Board it would seem to me has the responsibility to provide the thinking process, and the established evidence by which they come to their conclusions, particularly when such a measure of time has elapsed since the alleged offense, and record of trial.

 /s/ Jon A. Shaw
 JON A. SHAW
 Colonel, MC
 Psychiatry and Neurology
 Consultant

APPENDIX 2

UNITED STATES, Appellee

v.

Captain FRANK L. KING,

474–52–6874,

United States Army, Appellant

CM 442194

UNITED STATES ARMY COURT OF MILITARY REVIEW

Before SU–BROWN, YAWN, and WALCZAK, Appellate Military Judges.

ORDER

WHEREAS, this Court has granted appellate government counsel's motion for an evidentiary hearing pursuant to *United States v. Dubay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1968), it is by this Court, this date

ORDERED:

1. That the record of trial is returned to The Judge Advocate General of the Army,

who will send the case to the convening authority for referral to a military judge for a hearing on the following matters:

a. Whether sufficient post-trial evidence on the matter of appellant's mental responsibility exists to warrant an order to rehear the issue *de novo* or other appropriate action. *United States v. Roberts*, 18 M.J. 192 (CMA 1984); *United States v. Triplett*, 21 U.S.C.M.A. 495, 45 C.M.R. 271 (1972); *United States v. Wimberly*, 16 U.S.C.M.A. 3, 36 C.M.R. 159 (1966).

b. Whether, considering all the matters on the issue of appellant's mental responsibility, a different verdict might reasonably result if the issue was again presented to a court-martial. *United States v. Triplett, supra.*

c. Whether appellant lacked the mental capacity to defend himself at trial. *United States v. Roberts*, 18 M.J. at 195 (Everett, C.J., concurring in the result).

2. That the witnesses to be called will include at least the following:

a. Colonel Jon A. Shaw, MD, MC, psychiatry and neurology consultant to the Surgeon General of the Army;

b. Colonel Lowman E. Gober, MD, MC, Commander, MEDDAC, Fort Leavenworth, Kansas;

c. Colonel John L. Strefling, DO, MD, MC, Chief, Community Mental Health Activity, Fort Leavenworth, Kansas;

d. Lieutenant Colonel Matthew E. Levine, MD, MC, Chief, Psychiatry Division, U.S. Disciplinary Barracks, Fort Leavenworth, Kansas;

e. Lieutenant Colonel Thomas Curtis, JAGC, Government Appellate Division, United States Army Legal Services Agency, Falls Church, Virginia;

f. Other witnesses (including lay witnesses, if deemed appropriate) who, in the opinion of trial counsel or the trial defense counsel, with the concurrence of the military judge, may be able to offer:

(1) relevant testimony regarding the observed condition and behavior of the appellant from the time of the earliest offense of which he now stands convicted to the date of the hearing ordered herein;

(2) relevant testimony concerning the procedure, methodology, thoroughness, and conclusions of the sanity board which rendered its report on appellant on 1 June 1984;

(3) relevant testimony concerning the sanity board's diagnosis of appellant, to include the meaning of the diagnosis and whether such a diagnosis is inconsistent with a determination of mental competence and capacity.

3. That the questions propounded to the witnesses, depending on their familiarity with appellant, his offenses, and his record of trial, will include at least the following:

a. How much time did you spend examining appellant prior to the conclusion of the sanity board which rendered its report on appellant on 1 June 1984?

b. What are the meanings of "atypical bipolar disorder" and "mixed personality disorder"?

c. Does a diagnosis of "atypical bipolar disorder" and/or "mixed personality disorder" preclude mental competence and capacity?

d. How is a physician, in 1983 or 1984, able to diagnose reliably a mental condition an individual was supposedly suffering from in 1980 and 1981?

e. What evidence adduced at the sanity board led to your conclusions?

f. What is the connection between appellant's alleged psychiatric condition and his mental state at the time of the offenses and at the time of trial?

g. Precisely what factors in appellant's observed behavior or in your examination(s) of appellant has led you to believe that appellant lacked mental competence at the time of his offenses and mental capacity at the time of the trial?

h. What is the likelihood that the symptoms and behavior exhibited by appellant which have led you to believe him to be psychiatrically ill have been caused or ap-

preciably exacerbated by his reaction to confinement?

i. Has appellant had disciplinary, behavioral, or adjustment problems in confinement? If so, describe them.

j. Have you read the record of trial in *United States v. King?*

k. Does appellant's discussions, comments, and responses at trial, as recorded in the verbatim record, affect your certainty of your diagnosis of appellant?

l. How does appellant's intelligence, area of expertise, education, training, and experience affect the reliability of your diagnosis?

m. How difficult would it be for someone of appellant's intelligence, area of expertise, education, training and experience to simulate the symptoms of mental incompetence and incapacity?

n. Precisely what is the evidence that appellant's mother suffers from the same conditions, and that these conditions are hereditary?

o. Was it appropriate for LTC Levine, appellant's physician, to serve as a member of the sanity board, or would it have been more appropriate for him to have appeared as a witness before it?

p. Are you familiar with the American Psychiatric Association's latest studies and conclusions regarding the interaction of psychiatry and criminal law, *i.e.,* the conclusion that it is difficult to differentiate between the "irresistible impulse" and the impulse simply "not resisted" or between the "undeterrable" criminal and the criminal who is simply "undeterred"? How does such a conclusion affect your opinion of the validity of a diagnosis made in 1983 and 1984 of conditions from which appellant supposedly suffered in 1980 and 1981? *United States v. Lyons*, 731 F.2d 243, 248 (5th Cir.1984) (en banc).

Any other questions deemed appropriate by either the trial counsel or the trial defense counsel, and determined by the military judge to be responsive to this order, may be asked and answered.

The military judge will take testimony and receive such documentary evidence as he deems relevant to the above matters. At the conclusion of the proceedings he will enter findings of fact and conclusions of law with respect to the issues stated in 1a, b, and c, *supra.*

The general court-martial convening authority, after receiving and considering the advice of his staff judge advocate and reviewing the record of proceedings, will: set aside and dismiss the remaining affirmed findings of guilty and sentence; set aside the remaining affirmed findings of guilty and sentence and order a rehearing *de novo;* or forward for further review by this Court.

Date: 29 November 1984