UNITED STATES, Appellee,

v.

Captain Frank L. KING, 474–52–6874, United States Army, Appellant.

CM 442194.

U.S. Army Court of Military Review.

10 Jan. 1991.

For appellant: Louis B. Font, Captain Jeffrey J. Fleming, JAGC, Captain Gregory A. Gross, JAGC (argued); Lieutenant Colonel Russell S. Estey, JAGC, Major Stewart C. Hudson, Major Kathleen A. Vanderboom (on brief).

For appellee: Captain John J. Hogan, JAGC, Captain Donald W. Hitzeman, JAGC (argued); Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Kathryn F. Forrester, JAGC, Captain Mark E. Frye, JAGC, Captain Marcus A. Brinks, JAGC (on brief).

Before NAUGHTON, CORRIGAN and WERNER, Appellate Military Judges.

## OPINION OF THE COURT ON FURTHER REVIEW

NAUGHTON, Senior Judge:

The appellant was convicted, contrary to his pleas, by a military judge sitting as a general court-martial at Fort Leavenworth, Kansas, during November and December 1987, of sodomy (1 specification), conduct unbecoming an officer and gentleman (3 specifications), and rape (1 specification), in violation of Articles 125, 133, and 120, Uniform Code of Military Justice, 10 U.S.C. §§ 925, 933, and 920 (1982) [hereinafter UCMJ], respectively. His approved sentence includes dismissal from the service, confinement for life, and forfeiture of all pay and allowances.

Except for the charge and specification alleging rape, the charges and specifications of which the appellant now stands convicted arose from a rehearing ordered by this court setting aside the appellant's conviction by a general court-martial convened at Fort Ord, California, during the months of September through November 1981.

His approved sentence at that time included dismissal from the service, confinement for fourteen years, and forfeiture of all pay and allowances. Upon initial review, this court set aside the findings of guilty of one specification alleging sodomy and three specifications alleging conduct unbecoming an officer and gentleman, and dismissed those specifications. The court also reassessed the sentence by reducing the confinement to ten years, and otherwise affirmed the remaining findings of guilty and the sentence as reduced. *See United States v. King,* 16 M.J. 990 (A.C.M.R.1983). The appellant then petitioned the United States Court of Military Appeals for a grant of review alleging for the first time that he was insane at the time of the commission of the offenses of which he was convicted. The appellant further moved to have his case remanded to this court for consideration of that issue. The Court of Military Appeals granted the appellant's

motion. *See United States v. King,* 17 M.J. 403 (C.M.A.1984) (summary disposition).

After remand, the appellant through counsel moved this court to order a sanity board to consider the appellant's mental health. We granted the motion on 13 April 1984 and the sanity board was convened at the U.S. Disciplinary Barracks, Fort Leavenworth, Kansas, on 29 May 1984. The Board unanimously found that:

(a) at the time of the alleged offenses, as a result of mental disease or defect, the appellant did lack substantial capacity to appreciate the criminality of his conduct and to conform his conduct to the requirements of the law; (b) at the time of trial, the appellant did possess sufficient mental capacity to understand the nature of the proceedings against him, but did not possess sufficient mental capacity to conduct or cooperate intelligently in his defense; and, (c) at the present time, the appellant does possess sufficient mental capacity to understand the nature of the proceedings and to intelligently conduct or cooperate in his appeal.

*United States v. King,* 24 M.J. 774, 775 (A.C.M.R.1987).

On 29 November 1984, this court returned the appellant's case to The Judge Advocate General of the Army for a limited hearing to determine facts relevant to the appellant's sanity under the authority of *United States v. DuBay,* 37 C.M.R. 411 (C.M.A.1967). That hearing was convened at Fort Leavenworth, Kansas, on 24 January 1985, and continued thereafter for nine days during the months of March, April, and June 1985. After hearing a substantial number of witnesses, the military judge entered findings of fact and conclusions of law to the effect that:

a. [T]here has been insufficient post-trial evidence concerning the accused's mental responsibility to warrant the trial of the issue *de novo.*

b. Considering all evidence on the matter, a different verdict would not reasonably result if the issue were presented to a new court-martial.

c. At his original trial and throughout the *DuBay* hearing, CPT Kind [sic] did not lack mental capacity to understand the nature of the proceedings against him nor to conduct or cooperate intelligently in his defense or presentation of his case. (Citation omitted).

Upon completion of the *DuBay* hearing this court evaluated the military judge's findings of fact and conclusions of law under the standard set forth in *United States v. Triplett*, 45 C.M.R. 271, 277 (C.M. A.1972), to wit: whether considering all matters on the issue, a different verdict might reasonably result if the issue was again presented to a court-martial. We concluded that there was sufficient evidence to raise the issue of insanity and that a different verdict might reasonably result if the issue was again presented to a court-martial. Accordingly, we set aside the findings of guilty and the sentence and authorized a rehearing. *See King*, 24 M.J. 774 (A.C.M.R.1987), for a complete discussion of the issues considered at that time.

The appellant through counsel now assigns the following errors: (1) the evidence is insufficient to sustain the appellant's conviction of rape; (2) the investigating officer, trial counsel, convening authority, and military judge abused their discretion by failing to order or request a sanity inquiry pertaining to Additional charges V and VI,[1] and the defense counsel were ineffective in failing to request a sanity board on those additional charges; (3) private consensual sodomy between adults of the opposite sex cannot be a criminal offense, as it is protected by the constitutional right to privacy; (4) it was error for the Deputy

Staff Judge Advocate, who had prepared the pretrial advice which was the subject of a defense motion for a new pretrial advice and who testified on a defense motion to disqualify him from acting as the Staff Judge Advocate, to prepare the post-trial advice and recommendation;[2] (5) the appellant alleges in his individual right that (A) he was given an inadequate time to prepare for trial of Additional Charges V and VI, both involving Ms. R., the alleged rape victim, and (B) he complains that he was denied effective assistance of counsel and thus was denied due process of law. Finally, (6) he alleged through counsel that the sentence he received is inappropriately severe. We find merit in the appellant's allegation that the evidence of record is insufficient to sustain his conviction of the offense of rape for the reasons hereinafter set forth.

I

Ms. R was a twenty-one-year-old married woman with one child, who was living with her soldier/husband and was attending college in Leavenworth, Kansas. On the evening in question, she had been working on a theater set for a class and had returned to her home before a planned get-together with friends at Green's Tavern. She consulted with her husband who declined the opportunity to go to the bar. Ms. R arrived at the bar at approximately 11:00 P.M., but didn't find the friends she allegedly intended to meet. She had a drink and struck up a conversation with the appellant who was at that moment working behind the bar. The conversation turned to music

1. On 7 April 1989, this court denied appellant's motion for a sanity inquiry concerning whether appellant was mentally responsible at the time of the 1987 offenses. We also note that the military judge dismissed Additional Charge VI and its Specification at the time he announced findings.

2. On 15 August 1989, this court specified the following issue:
DID THE MILITARY JUDGE ERR IN REQUIRING THE PRETRIAL ADVICE TO CONFORM WITH THE MANUAL FOR COURTS-MARTIAL, UNITED STATES, 1969, RATHER THAN MANUAL FOR COURTS-MARTIAL, UNITED STATES, 1984? *See United States v.*

*Brooks,* 17 M.J. 584 (A.C.M.R.1983), *petition denied,* 18 M.J. 109 (C.M.A.1984); *see also United States v. McDonagh,* 14 M.J. 415 (C.M. A.1983).
We answer the specified issue in the negative. *See United States v. King,* 24 M.J. 774, 777 n. 5 (A.C.M.R.1987). Additionally, we have carefully considered the appellant's assertions relating to the specified issue and his arguments about the need for a new review and action because of the alleged disqualification of the Deputy Staff Judge Advocate to prepare the post-trial advice and recommendation, and find them to be without merit.

and the appellant subsequently invited Ms. R to hear a song he had just written. She consented and the two people left the bar. A witness at the trial described their departure as leaving the bar "holding hands," and that the alleged victim sat as close to the appellant as possible in the appellant's pick-up truck.

The appellant lived in a second-story apartment that was entered by a private outside stairway in the city of Leavenworth. Upon arrival, the appellant immediately crossed the living room to one of two bedrooms and was followed by Ms. R. She sat in a chair and the appellant sat on the bed. He sang at least two songs which he accompanied with a guitar. At least one song was sad and made a substantial impression on Ms. R as she believed she may have had tears in her eyes. The appellant then laid down his guitar and came over to where Ms. R was sitting and hugged her.

At this point, the direct testimony of the two parties is diametrically opposed. Ms. R testified that after she was hugged, she stood up and pushed the appellant away from her person. The appellant then turned off the light in the bedroom and hugged her again, pushing her onto the bed. Ms. R stated that she protested and stated she didn't want to be there and that she didn't come there for this—(sex) but her protestations were ignored. The appellant then placed his hand between her legs, fondled her, and removed her panties and skirt. Ms. R then states that the appellant told her to remove her sweater and bra to which she complied. While she finished undressing, the appellant removed his clothing. Ms. R testified she was afraid of the appellant and didn't want to make him angry at her, and that he was holding her down. She described having sexual intercourse in several positions with the appellant. She cooperated with his instructions about how the sexual intercourse was performed. She further stated that the appellant asked her to commit oral sodomy upon his person but she refused.[3] Upon comple-

tion of the sexual intercourse, Ms. R testified that she went into the bathroom and when she came out the appellant left her and entered the bathroom, leaving her alone; yet, she made no attempt to get away.[4] Ms. R also testified that she was crying during and after the sexual relations.

The appellant's testimony in this regard was that he met Ms. R at Green's Tavern and they conversed for 30 to 45 minutes covering a variety of subjects. He acknowledged that he invited her to his apartment to hear his music and to "get a little passionate," and that she agreed and sat immediately next to him in his truck. Upon arrival he entered his bedroom and sat on the bed playing his guitar. He stated that Ms. R was touched by his songs and became tearful. He then stated that he hugged her and told her she should not be sad. He suggested they sit on the bed and they then moved to the bed. He then hugged her and she responded telling him she really should not be doing this and should not be in his apartment. He then describes hugging and kissing without any resistance or complaint from Ms. R. He described removing part of her clothing, she removed the remainder, and that the parties had consensual sexual intercourse. He testified he invited Ms. R to have oral sex with him but she refused saying, "No, I don't like that." The appellant testified that Ms. R consented to sexual foreplay and intercourse. He denied making any threats of bodily injury or harm, or using force of any type. He also described leaving Ms. R on the bed and using the bathroom, and that she made no attempt to leave the premises.

Upon dressing, the appellant returned Ms. R to Green's Tavern where she had left her automobile. She went directly home and advised her husband that she had been raped.

James Stewart testified that he observed the appellant and Ms. R at Green's Tavern, and described them as being "friendly,

---

3. The question is raised as to why the victim was able to refuse oral sodomy but not able to refuse sexual intercourse.

4. The bedroom was in the back of the apartment; the bathroom was next to the front door.

very friendly." Mr. Stewart also testified that he observed the appellant and Ms. R depart Green's Tavern. He stated that Ms. R was wearing a miniskirt and that he saw she was "kind of exposed" as she climbed into the appellant's truck from the driver's side. Mr. Stewart also stated that Ms. R sat very close to the appellant as "boyfriend and girlfriend" and that "they were like one."

Jenny Emge, a 15-year-old girl occupying the room directly under the appellant's bedroom, testified that she looked out her bedroom window and saw the appellant and Ms. R going up the stairs to the appellant's apartment. She also stated that normally she could hear the appellant playing his guitar and could hear conversation but could not discern words that were spoken. She also could hear people walking about. She testified that on the night in question she heard the appellant playing his guitar but nothing else. She stated that she had prepared for bed but remained awake for some period after the appellant and the alleged victim entered the apartment. She specifically testified she heard no crying, sobbing, or anyone screaming.

Ms. R was examined by hospital personnel that night. They confirmed she had had sexual intercourse but found no evidence of abrasions, bruising, or any other physical evidence that would warrant an inference she was raped. Ms. R admitted that the appellant had not made any threats to her. Moreover, the only force Ms. R attributes to him is pushing her to the bed, holding her there for some period of time, and stroking of her body.

## II

The standard for this court's review for legal and factual sufficiency of the evidence is well settled:

The test for the former is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). For factual sufficiency, the test is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the members of the Court of Military Review are themselves convinced of the accused's guilt beyond a reasonable doubt.

*United States v. Turner*, 25 M.J. 324, 325 (C.M.A.1987); Article 66, UCMJ. We resolve this case on the basis of factual sufficiency.

Article 120(a), UCMJ, provides in pertinent part: "Any person subject to this chapter who commits an act of sexual intercourse with a female not his wife, by force and without her consent, is guilty of rape and shall be punished by death or such other punishment as a court-martial may direct."

Paragraph 45c.(1)(b), Part IV, Manual for Courts–Martial, United States, 1984, provides further explanation concerning the issues of force and consent as follows:

*Force and lack of consent.* Force and lack of consent are necessary to the offense. Thus, if the female consents to the act, it is not rape. The lack of consent required, however, is more than mere lack of acquiescence. If a woman in possession of her mental and physical faculties fails to make her lack of consent reasonably manifest by taking such measures of resistance as are called for by the circumstances, the inference may be drawn that she did consent. Consent, however, may not be inferred if resistance would have been futile, where resistance is overcome by threats of death or great bodily harm, or where the female is unable to resist because of the lack of mental or physical faculties. In such a case there is no consent and the force involved in penetration will suffice. All the surrounding circumstances are to be considered in determining whether a woman gave her consent, or whether she failed or ceased to resist only because of a reasonable fear of death or grievous bodily harm. If there is actual consent, although obtained by fraud, the act is not rape, but if to the accused's knowledge the woman is of unsound mind or uncon-

scious to an extent rendering her incapable of giving consent, the act is rape.

■ Merely because Ms. R testified she did not desire to engage in the act of sexual intercourse does not alone establish that she was raped. *Mills v. United States*, 164 U.S. 644, 648, 17 S.Ct. 210, 211, 41 L.Ed. 584, 585 (1897). Article 120(a), UCMJ, requires proof of lack of consent *and* force. The act of sexual intercourse is an element of the offense and the force required is more than that which is incidental to the commission of the act of sexual intercourse. This element contemplates an application of force to overcome the victim's will and capacity to resist. *See Coker v. Georgia*, 433 U.S. 584, 597, 97 S.Ct. 2861, 2868, 53 L.Ed.2d 982, 993 (1977). The Court of Military Appeals recently noted in *United States v. Bonano–Torres:*

> [P]roof of resistance—or lack thereof—is highly significant in all rape cases where the victim has the capacity to resist. From evidence of resistance, the finder of fact may draw inferences as to the victim's state of mind on the factual issue of consent, *United States v. Williamson*, 24 MJ 32, 34 (CMA 1987), and the accused's state of mind regarding the affirmative defense of mistake of fact. *See e.g., United States v. Carr*, 18 MJ 297, 299 (CMA 1984) (alleged victim offered no resistance and did not scream). *While resistance is tangentially probative of the issues of consent and mistake of fact, proof of resistance is central to finding the element of force.*

*United States v. Bonano–Torres*, 31 M.J. 175, 178 (C.M.A.1990) (*quoting United States v. Bonano–Torres*, 29 M.J. 845, 850 (A.C.M.R.1989)).

■ The appellant asserts, as we have noted, that the evidence admitted at trial is insufficient to support his conviction of the offense of rape. The appellant also asserts that the government failed to prove beyond a reasonable doubt that he did not have an honest and reasonable belief that Ms. R had consented. In the instant case, we find that the government failed to prove beyond reasonable doubt that Ms. R had not consented, or that the appellant did not have an honest and reasonable belief that Ms. R had consented.

The facts and circumstances surrounding the events of 6 November 1987 support an inference of consent by Ms. R to the appellant's sexual advances. We have examined the record carefully to determine the extent of Ms. R's resistance in determining whether she refused consent. We find that consent by Ms. R can be inferred by her manner in speaking with the appellant at Green's Tavern; by her sitting so close to the appellant in his truck en route to his apartment; from the fact that when she said no to engaging in oral sodomy, the appellant respected her wishes, and the appellant and Ms. R engaged in sexual intercourse again; that no sobbing or crying was heard by anyone living downstairs from the appellant's apartment; and, that after sexual intercourse, Ms. R waited for the appellant to drive her back to Green's Tavern and made no attempt to leave his apartment, though she had the opportunity to do so.

In addition, consent can be inferred from the minimal resistance actually offered by Ms. R in that she testified she made no verbal protestations of any sort once she and the appellant had taken off her clothing. Furthermore, Ms. R never offered any physical resistance.

As to the element of force, the totality of the evidence does not suggest forcible sexual intercourse. Ms. R had willingly come to the appellant's apartment from Green's Tavern on a Friday night. The appellant had told her that they could "get a little passionate" at his apartment. Under the circumstances, it was honest and reasonable for the appellant to believe that Ms. R had consented to sexual intercourse. Furthermore, the fact that *after* sexual intercourse the appellant kept talking about how the experience had been a great one for both of them, told Ms. R that he wanted to see her again, and expected she wanted to see him as well, goes to show that the appellant actually believed that Ms. R had consented.

The testimony of both Ms. R and the appellant shows us that Ms. R never com-

municated any lack of consent and that there is insufficient evidence of force to support a finding of guilty of rape. In sum, we find as a matter of fact that the testimony of Ms. R does not establish the *corpus delicti* of the offense of rape.

We have considered the appellant's remaining assignments of error including those personally asserted pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and find them to be without merit.

The findings of guilty of Additional Charge V and its Specification are set aside and that charge is dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence based on the above indicated error and the entire record, and applying the criteria of *United States v. Sales*, 22 M.J. 305 (C.M.A.1986), the court affirms only so much of the sentence as provides for a dismissal from the service, confinement for ten years, and forfeiture of all pay and allowances.

Judge CORRIGAN * and Judge WERNER concur.