MILLS *v.* UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF ARKANSAS.

No. 536. Submitted December 15, 1896. — Decided January 4, 1897.

On the trial of a person accused of rape, the court, in charging the jury, said: " The fact is that all the force that need be exercised, if there is no consent, is the force incident to the commission of the act. If there is non-consent of the woman, the force, I say, incident to the commis-

sion of the crime is all the force that is required to make out this element of the crime." *Held*, that this charge covered the case where no threats were made; where no active resistance was overcome; where the woman was not unconscious; where there was simply non-consent on her part and no real resistance; and that such non-consent was not enough to constitute the crime of rape.

THE case is stated in the opinion.

No appearance for plaintiff in error.

*Mr. Assistant Attorney General Dickinson* for defendants in error.

MR. JUSTICE PECKHAM delivered the opinion of the court.

The plaintiff in error was indicted in the United States District Court for the Western District of Arkansas at the November term, 1895, for the crime of rape committed at the Cherokee Nation, in the Indian country, within the Western District of Arkansas, upon one Florence Hendrix, a white woman and not an Indian, and not a member of any Indian tribe. He was duly arraigned and pleaded not guilty, and was tried upon the indictment at the February term of the District Court in 1896, was found guilty as charged in the indictment, and sentenced to be hanged on the 23d day of June, 1896. A writ of error having been allowed, the record has been removed to this court for review.

Upon the trial the government gave evidence tending to show that on the night of December 7, 1894, James P. Hendrix, the husband of the prosecutrix, occupied a home with her and their four young children in the Indian Territory, about two miles southwest of a place called Foyle. A man named Maxwell was also at the house that night. They lived off the public road about a quarter of a mile. About eight o'clock that night, while the moon was shining, the defendant rode up to the house and asked his way to Kepthart's. He said he was lost and asked the husband, Hendrix, if he would please come to the door and put him in the right direction. When the witness opened the door the defendant "put his gun on

him," and told witness to come out. The prosecutrix said "No; you are not going out," to which the defendant answered, with an oath, "Yes; he is." The husband had on his night clothes, only drawers and shirt, and was barefooted. The defendant, he says, threatened to kill him, and told him to walk along down the road; saying, "My name is Henry Starr," who was a notorious train robber. The husband was then sent down the road by the defendant under threats to kill him if he did not go, and after he went the defendant took the woman, the prosecutrix, and, as she alleged, by threats compelled her to have connection with him twice.

Upon the cross-examination of the prosecutrix it appeared that she was, at the time of the trial, about 25 years old, and that she had been married 9 years. She was married at Mt. Vernon, in Missouri, and from that time had lived a wandering life with her husband, moving, as she said, "So often I could not tell you just exactly where." Her testimony in regard to the commission of the offence after the husband had moved down the road was given in great detail, which it is not necessary to here set forth.

As the verdict of the jury is conclusive upon the merits of the case it becomes of the highest importance that upon an issue of this kind, maintained by evidence such as this record presents, the court should charge the jury with accuracy regarding the ingredients of the crime and the facts necessary to be proved in order to show the guilt of the defendant. No portion of the charge of the court, under such circumstances, can be said to be harmless if it did not state correctly and fully the law applicable to the crime, even although it may be urged that in other portions of the charge the correct rule was laid down.

The crime itself is one of the most detestable and abominable that can be committed, yet a charge of that nature is also one which all judges have recognized as easy to be made and hard to be defended against; and it has been said that very great caution is requisite upon all trials for this crime, in order that the natural indignation of men which is aroused against the perpetrator of such an outrage upon a defenceless

woman may not be misdirected, and the mere charge taken for proper proof of the crime on the part of the person on trial. The defendant in this case denied even being present upon the occasion in question. The credibility of the prosecutrix was put in issue by her appearing on the stand as a witness, and although the jury might have disbelieved the evidence of the defendant, when he said that he was not there at all, yet they were under no legal necessity to believe in full the account given by the prosecutrix. Assuming the presence of the defendant, the jury had the right to believe all the testimony of the prosecutrix or only part of it; that is, they might have believed her testimony as to the fact of the connection between the defendant and herself, but were not bound to believe that it was against her consent and by the use of force overwhelming in its nature and beyond her power to resist, or by virtue of such threats against her life or safety as to overcome her will. Whether such threats were made or whether in their absence she resisted to the extent of her ability at the time and under the circumstances, was a question for the jury. The prosecutrix gave upon cross-examination a minute and extended account of the manner in which the crime was committed and of the circumstances surrounding its commission. How much of this testimony was credible and what inferences ought to be drawn from it all, were matters for the sole consideration of the jury.

With evidence such as has been outlined, the court in charging the jury said: " The fact is that all the force that need be exercised, if there is no consent, is the force incident to the commission of the act. If there is non-consent of the woman, the force, I say, incident to the commission of the crime is all the force that is required to make out this element of the crime." An exception was taken to the definition of the crime as given by the court.

In this charge we think the court did not explain fully enough so as to be understood by the jury what constitutes in law non-consent on the part of the woman, and what is the force, necessary in all cases of non-consent, to constitute this crime. He merely stated that if the woman did not give

consent the only force necessary to constitute the crime in that case was that which was incident to the commission of the act itself. That is true in a case where the woman's will or her resistance had been overcome by threats or fright, or she had become helpless or unconscious, so that while not consenting she still did not resist. But the charge in question covered much more extensive ground. It covered the case where no threats were made; where no active resistance was overcome; where the woman was not unconscious, but where there was simply non-consent on her part and no real resistance whatever. Such non-consent as that is no more than a mere lack of acquiescence, and is not enough to constitute the crime of rape. Taking all the evidence in the case, the jury might have inferred just that amount of non-consent in this case. Not that they were bound to do so, but the question was one for them to decide. The mere non-consent of a female to intercourse where she is in possession of her natural, mental and physical powers, is not overcome by numbers or terrified by threats, or in such place and position that resistance would be useless, does not constitute the crime of rape on the part of the man who has connection with her under such circumstances. More force is necessary when that is the character of non-consent than was stated by the court to be necessary to make out that element of the crime. That kind of non-consent is not enough, nor is the force spoken of then sufficient, which is only incidental to the act itself.

Bishop in his treatise on Criminal Law says that the proposition as to the element of consent, deducible from the authorities, is that although the crime is completed when the connection takes place without the consent of the female, yet in the ordinary case where the woman is awake, of mature years, of sound mind and not in fear, a failure to *oppose* the carnal act is consent; and though she object verbally, if she make no outcry and no resistance, she by her conduct consents, and the act is not rape in the man. 2 Bishop Crim. Law, § 1122. This is consistent, we think, with most of the authorities on the subject. See *People* v. *Dohring*, 59 N. Y. 374, and cases there cited. In the New York case it was

held, after an examination and review of the cases, that if the woman at the time was conscious, had the possession of her natural, mental and physical powers, was not overcome by numbers or terrified by threats, or in such place and position that resistance would have been useless, it must also be made to appear that she did resist to the extent of her ability at the time and under the circumstances.

So where the court stated, that if there was no consent of the woman, the force incident to the commission of the act itself is all that is required to make out this element of the crime, the court should have included in that statement of the law the kind of non-consent which the law declares is necessary should exist. In the cases mentioned above mere non-consent was not enough nor was the force spoken of sufficient. Although it may be claimed that other portions of the charge of the learned court stated correctly the law with reference to this particular case, yet we cannot escape the fear that the error above pointed out may have found lodgment in the minds of the jury. Where the evidence of the commission of the crime itself impresses us as being somewhat unsatisfactory, and in a case where the life of the defendant is at stake, we feel that it is impossible to permit him to be executed in consequence of a conviction by a jury under a charge of the court which, we think, in some of its features was clearly erroneous in law, because not full enough on the subject herein discussed, even though in some parts of the charge a more full and correct statement of the law was given. Which of the two statements was received and acted upon by the jury it is wholly impossible for this court to determine, and as one of them was erroneous in not more fully and definitely stating what was the character of the non-consent which rendered the mere amount of force incident to the performance of the act itself sufficient to constitute the crime, the judgment of death must be reversed, and the defendant subjected to another trial where the rules of law applicable to the case shall be correctly and fully stated to the jury.

*The judgment is, therefore, reversed, and the cause remanded with instructions to grant a new trial.*