STATE OF IOWA, Appellee, v. ARCHIE MORRISON, Appellant.

RAPE: Nonresistance as Bearing on Consent. A single threat to
1   kill, *unaccompanied by any demonstration of brutal force or of dangerous weapons,* will not excuse a total failure of a female to make outcry or resistance, by word or act, when she is a woman of mature years, a widow, fully conscious, and in possession of ordinary physical powers.

RAPE: Definition. Definition of rape reviewed, and held suf-
2   ficient, under the record presented, though subject very properly to amplification.

*Appeal from Lee District Court.*—JOHN E. CRAIG, Judge.

OCTOBER 19, 1920.

THE defendant was indicted, tried, and convicted of the crime of rape, and appeals. The material facts are stated in the opinion.—*Reversed.*

*E. C. Weber,* for appellant.

*H. M. Havner*, Attorney General, and *J. M. C. Hamilton*, County Attorney, for appellee.

ARTHUR, J.—The errors relied on question the sufficiency of the evidence to sustain the verdict, and the action of the court in giving and refusing certain instructions and rulings on evidence.

1. RAPE: non-resistance as bearing on consent.

It appears from the testimony of Abbie Gehle that she is a widow, 48 years old, and lives with her son-in-law, Harry Stein, on the Augusta Road, north of Fort Madison; that, on the evening of the 6th of November, 1918, she was driving a horse and buggy along the road north of the Willard farm, near the state penitentiary farm, and some man climbed into the buggy on the left side (she was sitting on the right side); that she did not see who he was; that it was getting dark, being a little after six o'clock; that it was light enough so that she could have seen, but she did not see him; that she made no outcry, when the man got into the buggy; that he told her to keep quiet, or he would kill her, and she kept quiet; that he jammed her hat down over her eyes; that she made no outcry, because, she said, she was in fear of her life; that he crawled over her and pulled her out on the right side of the buggy and dragged her over to the fence and under the fence and into a cornfield, and there had sexual intercourse with her; that, on the way from the buggy to the fence, her hat and glasses dropped off; that, during all the time he was pulling her out of the buggy and dragging her across the road and under the fence and into the cornfield, three or four rows, she made no outcry, because, she says, she was taken so by surprise, and was too badly scared, that she was in fear of her life; that all the time he kept over her face a fur collarette that she was wearing, and it prevented her from seeing; that she said nothing to him at any time except when her glasses fell off, when she said "Be careful," that she could not see without them, and did not want to lose them; that she knew what was happening; that, from the time he took her out of the

buggy, there was no conversation, and she did nothing; that he did not tell her what he wanted; that she was not unconscious at any time, and knew what was happening all the time. She said she imagined what his purpose was, and made no outcry, and did nothing to prevent him; that she made no resistance whatever; that she did nothing to prevent him from having intercourse with her, because she was too badly scared—she was afraid for her life.

The evidence shows that there is a cornfield lying east of the road,—east of the fence on the east side of the road,—and the intercourse claimed by the prosecutrix took place over this fence in the cornfield. After the occurrence, defendant told prosecutrix not to go out into the road until she got to the schoolhouse, which was further north on the road, and he also told her that he would cut her throat if she said anything about what had occurred. When defendant first climbed into the buggy, he jammed her hat down over her eyes, and afterwards, when her hat fell off, perhaps, he pulled her collarette up over her eyes and kept it over her eyes, so that she never got a look at him. When in the buggy, he told her to keep quiet and make no outcry, or he would kill her; and she says she was in fear for her life. He made no other threat until after the intercourse was over, when he told her that he would cut her throat if she said anything about what had occurred. She made no resistance at any time, by word or act. She says she did nothing to prevent his taking her from the buggy across the road, through the fence, into the cornfield, and having sexual intercourse with her, and made no outcry, because she was too badly scared, and in fear for her life.

In instructing the jury, the court gave the statutory definition, and, in addition, the following definition of rape:

"Rape is the act of sexual intercourse, accomplished with a female not the wife of the perpetrator, when she resists, but her resistance is overcome by force or violence, or when she is prevented from resisting by *threats* of immediate and great bodily harm, accompanied by the apparent power of execution."

We think the above instruction fairly laid down the rule applicable to this case, and applicable to the facts in this case. It might well have been amplified, and the jury told with more particularity that force consisting of threats and acts on the part of the defendant, such as would overcome the will of the woman by fear, must be such as to reasonably create apprehension of death, or immediate and great bodily harm. But the failure to so instruct was not error. The instructions fairly submitted the case to the jury. We find no error in refusing to give instructions asked by the defendant.

2. RAPE: definition.

We do not discuss the assignments lodged against such refusals, in view of our holding in this case, neither will we discuss assignments directed to rulings on evidence. They were not well taken, and, under our holding, it would serve no good purpose to discuss them. They raised only questions that have been passed on by this court many times.

In the case of *Mills v. United States,* 164 U. S. 644, at 649, Mr. Justice Peckham states the rule:

"That, if the woman at the time was conscious, had the possession of her natural, mental, and physical powers, was not overcome by numbers or terrified by threats, or in such place and position that resistance would have been useless, it must also be made to appear that she did resist to the extent of her ability at the time and under the circumstances."

Also, at page 648:

"Bishop, in his treatise on Criminal Law, says that the proposition as to the element of consent, deducible from the authorities, is that, although the crime is completed where the connection takes place without the consent of the female, yet in the ordinary case, where the woman is awake, of mature years, of sound mind, and not in fear, a failure to *oppose* the carnal act is consent; and though she object verbally, if she make no outcry and no resistance, she by her conduct consents, and the act is not rape in the man. 2 Bishop on Criminal Law, Section 1122."

Perhaps the leading case on the subject is *People v. Dohr-*

*ing,* 59 N. Y. 374 (17 Am. Rep. 349). It is there said, *inter alia*:

"Certainly, if a female, apprehending the purpose of a man to be that of having carnal knowledge of her person, and remaining conscious, does not use all her own powers of resistance and defense, and all her powers of calling others to her aid, and does yield before being overcome by greater force, or by fear, or being surrounded by hostile members, a jury may infer that * * * it was not against her will. Of course, the phrase 'the utmost resistance' is a relative one; and the resistance may be more violent and prolonged by one woman than another, or in one set of attending physical circumstances than in another. In one case, a woman may be surprised at the onset, and her mouth stopped so that she cannot cry out, or her arms pinioned so that she cannot use them, or her body so pressed about and upon that she cannot struggle. But whatever the circumstances may be, there must be the greatest effort of which she is capable therein, to foil the pursuer and preserve the sanctity of her person."

In *Smith v. State,* 80 Am. Dec. 355, in note at page 365, the subject is well treated. There it is said:

"Where the woman is paralyzed from fear and terrified into submission, this submission and failure to make resistance or outcry will not constitute consent, and the offense is rape, notwithstanding."

It is further said:

"Thus, where a father by his ferocity established a 'reign of terror' in his family, and had carnal intercourse with his daughter, who remained passive because of fear, but gave no consent, the offense was rape. It is not necessary to show that there was force enough used to create a reasonable apprehension of death. But it should be established that the defendant intended to accomplish his purpose, in spite of all resistance."

We find no Iowa cases where the facts are similar to the case at bar. Bearing somewhat upon the question, see *State v. Ward,* 73 Iowa 532; *State v. Harlan,* 98 Iowa 458.

We find no cases where a mere threat, even a threat to kill, unaccompanied by a demonstration of brutal force or dangerous weapon, is held to be a sufficient putting in fear to excuse nonresistance. In the *Mills* case, supra, the defendant had a gun, and represented himself as a notorious desperado. Following this, the *Mills* case was reversed, not on account of the insufficiency of the evidence, but because of an erroneous instruction given by the trial court.

In *Doyle v. State,* 39 Fla. 155 (22 So. 272), it was held that, in a prosecution for rape, where the evidence tends to show that the commission of the offense was accomplished by an exhibition of weapons and threats on the part of the defendant, calculated to produce in the mind of the woman a reasonable fear of death or great bodily harm in case of refusal or resistance on her part, it is not error to refuse to charge the jury that they must acquit the accused, unless satisfied beyond a reasonable doubt that the woman did not, during any part of the act, yield her consent. Consent of the woman from fear of personal violence is void, and, though a man lays no hands on the woman, yet if, by an array of physical force, he so overpowers her that she dares not resist, his carnal intercourse with her is rape.

Unlike the case at bar, in this case the accused had solicited the woman to have sexual intercourse with him, and she refused him, and he begged her, and offered her money to submit, and she still refused, and the defendant then cursed her and drew a knife, and threatened to kill her if she did not submit, saying that he would gratify his desire anyway, and that he would kill her if she did not submit; and under that situation, she did submit without further resistance.

In *Cole v. State,* 57 Tex. Cr. Rep. 51 (136 Am. St. 973), the accused, while making his threats, held a pistol in his hand, while he had carnal knowledge of the girl. The evidence was held sufficient to sustain a conviction on the charge of threats.

Many cases are found where no resistance was made by the woman, but in such cases, strong physical force was ex-

hibited at the onset, or a gun or a knife exhibited, and by such means, the victim terrified.

In the case at bar, it does not appear that the defendant used the prosecutrix roughly at the onset or at any time; he made only the one threat—that he would kill her if she made outcry—before the intercourse, and that threat was made while they were both in the buggy. He never told her how he was going to kill her; he never exhibited or intimated that he had a gun or knife, or any sort of a weapon. She says she was scared, but she does not say just how her fright affected her. She did not plead with the man to desist. She said nothing, except when her glasses fell off. Then she said, "Be careful." On the witness stand, she said she spoke that way about the glasses because she did not want to lose them, for she could not see without them.

It seems to us that the evidence is too frail to sustain the verdict. The motion to direct a verdict for the defendant at the close of the testimony should have been sustained. The case is—*Reversed.*

WEAVER, C. J., LADD and STEVENS, JJ., concur.