PEOPLE v. BARK.

1. CRIMINAL LAW—STATUTORY RAPE—FAILURE TO CHARGE AS TO ASSAULT.

In prosecution for statutory rape, failure to charge that defendant might be found guilty under charge of assault will not be considered by Supreme Court, in absence of request to give such charge.

2. SAME—TRIAL—APPEAL AND ERROR—WITNESSES.

In prosecution for statutory rape, permitting prosecutor to ask witness for defendant if she did not say that if prosecutrix's father did not do something about it she would, *held*, not prejudicial, in view of negative answer.

3. SAME—HEARSAY.

Objection that hearsay testimony was admitted may not be considered by Supreme Court, where it was admitted without .objection, and brief does not point out objectionable testimony.

4. RAPE—STATUTORY RAPE—WEIGHT OF EVIDENCE.

In prosecution for statutory rape, verdict of guilty, *held*, against weight of testimony.

Error to Genesee; Brennan (Fred W.), J. Submitted April 17, 1930. (Docket No. 136, Calendar No. 34,382.) Decided June 27, 1930.

Harry Bark was convicted of statutory rape. Reversed, and new trial ordered.

*Roach, Bean & Church*, per *John L. Roach*, and *Carton, Gault & Parker*, for appellant.

*Wilber M. Brucker,* Attorney General, *Charles D. Beagle,* Prosecuting Attorney, and *Philip Elliott,* Assistant Prosecuting Attorney, for the people.

BUTZEL, J.  Harry Bark, at the age of 17 or thereabouts, was convicted of statutory rape of Nina Arnold, who, at the time of the alleged offense, viz., the 28th day of June, 1928, was almost 13 years of age.  The parties lived on a farm in the township of Forest, in Genesee county, where Nina worked for respondent's family.  It is claimed that about 2:30 in the afternoon of June 28, 1928, when respondent's mother had gone to a neighboring farm in order to borrow some laundry soap, respondent asked the prosecutrix to come into his room, and there committed the crime while his brother held the door shut.  The child claims she made efforts of resistance but no outcry; that she immediately went to an outside lavatory; that two days later she went to a neighbor's house, where she remained overnight; that she then went to another neighbor's, where she worked for several months; that just before leaving respondent's home she had a quarrel with respondent's mother in regard to using the laundry, and that she did her washing after she arrived at the neighbor's home.  She admits that on the night of the 30th of June she went to a dance with another boy; that she remained with the boy in a car parked in front of the schoolhouse for a short period; that she spent the night at the home of the neighbor where she remained the one day. She did not mention the commission of the crime to anyone for approximately ten days.  Not feeling well, she suspected pregnancy, and thereupon a doctor was called in, who, upon an examination,

found a scar from which he determined that there had been penetration, which he testified could have been caused in some other manner than that charged by prosecutrix. She thereupon made a criminal charge against respondent, who was arrested, tried, and sentenced to a term of from five to ten years in the Ionia reformatory.

There were serious questions of fact in the case. It is also claimed that the court erred in not charging the jury that the respondent might be found guilty under the charge of assault, or of assault with intent to rape. There was no request to make such a charge, and under the rule in *People* v. *Manchester*, 235 Mich. 594, it will not now be considered by this court. Error is also claimed because Mrs. Frances, a witness for the defense, was asked by the prosecutor on cross-examination:

"You told Mr. Arnold (the little girl's father) if he did not do something about her, you would?"

—and the answer was "No." Objection was made to the question and answer, but it was permitted to stand. Inasmuch as the answer was "No," it could not have been prejudicial. Further objection is made in regard to other testimony as hearsay, but no objection was made to such testimony at the time, and the brief for respondent does not point out what the objectionable testimony was. Therefore, we cannot consider it. Some difficulty, however, arises in regard to the charge of the judge and the question whether the verdict of the jury was not against the great weight of the evidence.

The testimony of respondent and his brother and father is to the effect that respondent was working out on the farm on the day and at the time in ques-

tion.   Respondent's mother testified that she was at home at the time in question and did not go to the neighbor's house to get soap until two days later. The neighbor also testified that it was two days later, *viz.*, on the 30th day of June, that respondent's mother came to his house to borrow the soap. Another neighbor also testified that prosecutrix was at her home at the very hour of 2:30 on the day in question; that she distinctly remembered the time because she had a young baby whose scheduled feeding hour was at the time prosecutrix visited her at her home, one mile from respondent's home.   The testimony of another witness was to like effect.   The testimony of the three physicians in the case also created considerable doubt.   It was shown by respondent's own physician that, on the date of the alleged crime, respondent was suffering from a very virulent case of gonorrhea; that the disease was at its height at that particular time; and that respondent could not have committed the crime without extreme pain to himself.   A microscopic examination by the State department of health at Lansing confirmed the fact that prosecutrix did not contract the disease.   The testimony of the physicians was to the effect that it was very probable that the child would have contracted the disease if her statements in regard to the crime were true.   One physician stated that he never heard of a case where a girl under such circumstances did not contract the disease; another, that she would be very apt to; and another, that there was a chance that she would not, but the chances were very much in favor of her contracting the disease.   One physician stated that, if there had been micturition as claimed by the child, it might have acted as a prophylaxis.   A careful search of

the medical authorities fails to help. The virulence of the disease is known, and the susceptibility of young children after contact is recognized by the authorities. Unfortunately data in regard to immunity is lacking, for the attention of physicians is more frequently called to the victims of the disease than to those who escape it. There is no question, however, that the disease is highly contagious, and the likelihood of young children escaping it after contact is open to question.

The recital of the crime by a child fills the members of the average jury with such horror and indignation that it is frequently difficult to overcome their first impressions. As was said in *Mills* v. *United States,* 164 U. S. 644 (17 Sup. Ct. 210):

"It has been said that very great caution is requisite upon all trials for this crime, in order that the natural indignation of men which is aroused against the perpetrator of such an outrage upon a defenseless woman may not be misdirected, and the mere charge taken for proper proof of the crime on the part of the person on trial."

Under the circumstances, it is particularly necessary for a trial judge to exercise the greatest caution in the trial of a case of this character. The following questions were asked by the prosecutor of a witness:

"*Q.* Your attitude at that time was that you thought this boy ought to be prosecuted?

"*A.* No, sir; I did not know a thing about it; I did not know if it was so or not. I knew this boy four years; it was not anything to me.

"*Q.* Four years, and don't know anything of him to his credit?

"*A.* Don't know nothing bad about the boy."

However, it was not objected to, and therefore it was not corrected. The respondent testified in his own behalf that he had contracted the disease from a toilet seat. This statement undoubtedly left a bad impression with the jury, for the medical testimony made his explanation very doubtful. The judge devoted almost one-third of his charge to advising the jury not to be influenced by the number of witnesses alone, stating that they might believe one person in preference to six or eight others; he may have indirectly emphasized whom they might believe. There is no error, as claimed, in this charge, though it would have been far better had he commented more fully upon the testimony and cautioned the jury to exercise the greatest care. He did charge in a brief manner as to presumption of innocence and the necessity of proving the respondent guilty beyond a reasonable doubt.

After a very careful examination of the record, we are constrained to hold that the verdict was against the weight of the testimony. For this reason the judgment of the lower court is reversed. Respondent is remanded to the custody of the sheriff of Genesee county, and a new trial is ordered.

WIEST, C. J., and CLARK, McDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.