UNITED STATES, Appellee,

v.

Staff Sergeant Felix A. BONANO–
TORRES, 583–15–0512, United
States Army, Appellant.

ACMR 8801994.

U.S. Army Court of Military Review.

30 Nov. 1989.

For Appellant: Major Marion E. Winter, JAGC, Captain Ralph L. Gonzalez, JAGC (on brief).

For Appellee: Lieutenant Colonel Gary F. Roberson, JAGC, Major Gary L. Hausken, JAGC, Captain Jonathan F. Potter, JAGC (on brief).

Before DeFORD, KANE and WERNER, Appellate Military Judges.

## OPINION OF THE COURT

DeFORD, Senior Judge:

Contrary to his pleas, the appellant was convicted by a military judge sitting as a general court-martial of rape, assault and battery, and false swearing in violation of Articles 120, 128 and 134 of the Uniform Code of Military Justice, 10 U.S.C. §§ 920, 928, and 934 (1982) [hereinafter UCMJ]. His approved sentence included a dishonorable discharge, confinement for twenty-four months, forfeiture of $600.00 pay per month for twenty-four months, and reduction to the grade of Private E1.

On appeal, appellant contends that the evidence of record is insufficient to support his convictions for rape and assault and battery. We agree that the evidence is insufficient to support the offense of rape, but affirm the appellant's conviction of assault and battery.

## I

## FACTS

### A. THE ASSAULT AND BATTERY

The record of trial discloses that the appellant, a married man, was a noncommissioned officer assigned to the Army Finance Office in Bremerhaven, Federal Republic of Germany. On 31 May 1988, the appellant was ordered on an overnight pay mission to Flensburg, Federal Republic of Germany. Specialist L.T., a female finance clerk, was assigned to assist the appellant in performing the pay mission. The parties departed Bremerhaven on that date by army vehicle and traveled to Flensburg where they stayed in separate rooms at a local hotel in that city. After completion of the day's work, the parties had dinner together at a local restaurant and then attended a discotheque. Both parties consumed several glasses or bottles of beer, but did not dance together. The parties returned to their hotel, at which time the appellant purchased two bottles of beer and suggested to L.T. that they go to his room and play cards. L.T. agreed and the parties consumed the beer and played cards. The parties each consumed five glasses or bottles of beer over the course of the evening. While playing cards, appellant attempted to kiss L.T., but she moved away from him. They continued playing cards and joking with each other. They discussed the appellant's marriage and L.T. learned that appellant's marriage was not good at the time and that the appellant and his wife had sexual problems. The appellant then kissed L.T. Although she did not pull away from the appellant, she told him that "they should not do this." She further told appellant that he was married and that she had a boyfriend she trusted and did not want to ruin that relationship. L.T. stated that she should leave the room but the appellant requested that she stay. She did and they continued playing cards. Appellant asked L.T. to lay with him on the bed, but she refused. The appellant then kissed L.T. a second time. Appellant told her they should stop trying and "just do it." Appellant then unsuccessfully attempted to unbutton L.T.'s blouse without touching her person. L.T. told appellant she wanted to leave and departed the room. L.T. testified that at no time was she afraid of the appellant nor did he employ any force against her person, although she did not consent to his advances.

### B. THE RAPE

On 14 June 1988 the appellant was again assigned a pay mission to the city of Flensburg, Federal Republic of Germany. On this occasion, Specialist S.L.C. was assigned to assist the appellant and the two traveled by army vehicle to that city. They took separate rooms in a local hotel and completed the day's duty. Appellant asked S.L.C. to join him for dinner and the parties

attend a better-than-average restaurant, a place for which S.L.C. believed she was under dressed. S.L.C. had a salad and beer; the appellant paid the tab. Following dinner, the parties attended a "spieltheque"[1] where they consumed more beer. During the course of the evening, appellant informed S.L.C. about his marital and sexual problems. S.L.C. was acquainted with appellant's wife and children.

During the course of the evening, appellant and S.L.C. consumed approximately five glasses and/or bottles of beer. S.L.C. testified that she was feeling the effects of the beer because she normally drank only one beer during an evening. While walking back to the hotel, the appellant picked a rose which he presented to S.L.C.. Walking up the stairs of the hotel, S.L.C. informed the appellant that she was trying to lose weight. The appellant then picked her up and carried her in his arms to the door of her room. He asked her if he could use her bathroom, and she consented. Upon entering the room, S.L.C. laid down on the bed and the appellant entered the bathroom. She testified that appellant remained in the bathroom for an extended time where he removed his clothing. S.L.C. testified that she fell asleep on the bed and was awakened by the appellant's kisses and his hand(s) massaging her breast. S.L.C. testified she did not see that appellant was naked until he was on the bed with her. However, her pretrial statement, which was admitted into evidence, states that she observed the appellant exit the bathroom naked.

S.L.C. stated that she was "waking up" as these events were occurring. She stated that she was confused and apparently told the appellant that she did not "want to do this" because he was married. Appellant allegedly responded, "[D]on't worry, don't feel guilty." S.L.C. testified that she kept turning her head and moving appellant's hands. Appellant told her he would stop and shortly thereafter did so.

S.L.C. then testified that she passed out, however, her pretrial statement indicates that she went back to sleep.[2] She again awakened as appellant was removing her pants. S.L.C. told appellant, "You have children and you are married", but appellant continued his efforts to arouse her. She again requested he stop his advances. Again he complied and then left her alone. S.L.C. testified that she passed out again. On waking, she discovered that appellant was positioned between her legs. She stated at this point that appellant had been very persistent, that he would continue to harass her, and that all she wanted was to go to sleep. She stated that she knew if he got what he wanted, he would "finally go to bed, leave her alone, leave, or whatever."

She permitted the appellant to have sexual intercourse with her. She stated that when it was over she knew he would not bother her further and she fell back asleep. She then said she "passed out." She further testified, "I knew he'd leave me alone once he had sex with me and I knew he wouldn't leave me alone until he did." She indicated she permitted the act of sexual intercourse for this reason. She further stated she could not be mistaken about the operative facts concerning the incident because she was "very aware." S.L.C. did not yell, scream, or attempt to leave the hotel room, nor did she get off the bed or otherwise attempt to get away from the appellant.

The following day, the parties completed their mission and returned to their home base. S.L.C. did not report the incident to competent authority until some four days had elapsed. During this interim period, she was concerned about her boyfriend finding out about the incident. Also during the interim, she inquired of L.T. if anything had happened to her during her pay mission with the appellant. She then intimated to L.T. that something had happened to her without saying that it included sexual

1. Although the record is not clear, a "spieltheque" seems to be a drinking establishment, somewhat similar to an American bar.

2. Although S.L.C. testified at trial that she had "passed out," her prior sworn statement admitted by the prosecution only states that she "fell asleep."

intercourse. In the course of discussing the matter with her boyfriend and other female NCO's, she determined to report the matter to competent authority. However, she was not sure whether she had been raped.

## II

Appellant alleged, as we have noted, that the evidence admitted at trial is insufficient to support his conviction of assault and battery and the offense of rape.

■ In testing for the legal sufficiency of the evidence of record, we must determine whether a rational fact finder could find the essential elements of the offense when the evidence of record is considered in the light most favorable to the prosecution. In testing for the factual sufficiency of the evidence, this court must weigh the evidence of record taking into consideration that we have not seen or heard the witnesses and determine whether the accused is guilty beyond a reasonable doubt of the offenses of which he has been convicted. *See United States v. Rath*, 27 M.J. 600, 601 (A.C.M.R.1988), *petition denied*, 29 M.J. 284 (C.M.A.1989), and the cases cited therein; Article 66, UCMJ.

## A. THE ASSAULT AND BATTERY

■ Under the specification as pled, it was incumbent upon the prosecution to prove beyond a reasonable doubt that (1) the appellant did bodily harm to L.T.; that (2) the appellant did so by kissing L.T. on the lips and by attempting to unbutton a button on her blouse with his hand; and that (3) the bodily harm was done with unlawful force and violence. In addition, it must be shown that the act committed was done without any legal justification or excuse and without the consent of the victim. Bodily harm consists of any physical injury to or offensive touching of another person, however slight. Manual for Courts–Martial, United States, 1984, Part IV, paragraph 54. *See also* Department of the Army Pam 27–9, Military Judges Benchbook, paragraph 3–107 (change 3, 15 February 1989).

The evidence adduced at trial shows that the appellant made an initial attempt to kiss L.T. but received no cooperation from her; he subsequently kissed L.T. but received only her remonstrance that they should not be doing such acts and a reminder that appellant was married. Although L.T. declined the appellant's sexual advances, appellant kissed L.T. again. With respect to this final kiss, appellant was clearly aware his advances at this point were unwelcome by L.T. and could be considered offensive. "Bodily harm" as that term is used in the elements of the offense requires an offensive touching without the consent of the victim and we are satisfied that appellant's last kiss of L.T. was offensive in every respect. Accordingly, we are satisfied beyond a reasonable doubt that the appellant committed an assault and battery upon L.T. by that act.

Appellant's attempt to unbutton a button on L.T.'s blouse may be evidence of his intent to commit an indecent assault, an offense not charged. In view of the fact that he did not touch her person but only her blouse and the button, we find that such act was not a battery and not part of the assault and battery committed upon her person as required by Article 128, UCMJ. We will correct this error in our affirmance as set forth hereafter.

## B. THE RAPE

■ With regard to the allegation of rape, the Government argues that the issue of sufficiency is no more than one of credibility. Credibility of witnesses becomes a factor for consideration when a conflict exists between the testimony of two or more witnesses. In the case at bar, however, we find as a matter of fact and law that the testimony of S.L.C. does not establish the *corpus delicti* of the offense of rape.

■ The fact that a woman does not consent to or desire to engage in the act of sexual intercourse does not alone permit conviction for the offense of rape. *Mills v. United States*, 164 U.S. 644, 648, 17 S.Ct. 210, 211, 41 L.Ed. 584 (1897); Manual for Courts–Martial, United States, 1984, [here-

inafter M.C.M.], Part IV, paragraph 45c(1)(b). The statutory element requires proof of lack of consent *and* force. Because the act of sexual intercourse is itself an element of the offense, the force required is more than that merely incidental to the act of sexual intercourse. *Id.* Rather, this element contemplates an application of force to overcome the victim's will and capacity to resist. *See Coker v. Georgia,* 433 U.S. 584, 597, 97 S.Ct. 2861, 2868, 53 L.Ed.2d 982 (1977).

▆▆▆ As a consequence, proof of resistance—or lack thereof—is highly significant in all rape cases where the victim has the capacity to resist. From evidence of resistance, the finder of fact may draw inferences as to the victim's state of mind on the factual issue of consent, *United States v. Williamson,* 24 M.J. 32, 34 (C.M.A.1987), and the accused's state of mind regarding the affirmative defense of mistake of fact. *See e.g., United States v. Carr,* 18 M.J. 297, 299 (C.M.A.1984) (alleged victim offered no resistance and did not scream). While resistance is tangentially probative of the issues of consent and mistake of fact, proof of resistance is central to finding the element of force.

▆▆▆ If the alleged victim does not resist but instead acquiesces—submits passively—to the act, it cannot be said that force has been applied. In other words, "without consent" means "against the will" of the victim. *United States v. Short,* 16 C.M.R. 11 (C.M.A.1954). *Accord Wharton's Criminal Law,* § 285 (14th ed. 1980). Thus, evidence of lack of consent alone without evidence of resistance as may be appropriate under the circumstances establishes, at law, no more than the victim's acquiescence and as such does not constitute the crime of rape.[3] *Mills v. United States,* 164 U.S. at 648, 17 S.Ct. at 211.

▆▆▆ This is not to say that a lack of *physical* force will *per se* negate the criminality of an act of sexual intercourse. The concept of constructive force, a legal fiction, has been applied in cases where the victim is helpless, drunk, or where the victim lacks the capacity to consent. *See United States v. Baran,* 22 M.J. 265, 266 (C.M.A.1986), and the cases cited therein. Nor is a victim required to resist to the utmost of her capacity. *United States v. Henderson,* 15 C.M.R. 268, 273 (C.M.A. 1954). A victim is not required to continue to resist when continued resistance would be vain and useless; the law relieves the victim of any obligation to engage in vain and useless efforts to resist at the risk of added injury. *See e.g., United States v. Williamson,* 24 M.J. 32 (C.M.A.1987) (victim offered no further resistance because the offense occurred in a deserted rural area and the accused possessed superior strength).

▆▆▆ The physical capacity of the victim to resist under the circumstances is a factor to be considered in determining whether the victim reasonably resisted the offender's acts. If the victim is so intoxicated or otherwise physically incapacitated that she cannot resist, she will not be considered to have consented to the sexual act. *United States v. Baran, supra* at 266. *See also United States v. Short, supra.*

▆▆▆ The testimony of S.L.C. establishes only that she wanted to go to sleep but "knew" that the appellant would continue "harassing" her until he had sexual intercourse with her; so she passively submitted to the act. Her testimony does not establish that she was physically incapacitated, and although she felt some intoxication and was tired, our reading of the record persuades us that her degree of intoxication and fatigue was not so great that she could not have resisted and could have probably thwarted the appellant's ac-

---

3. The Manual states that "The lack of consent required, however, is more than mere lack of acquiescence." Manual for Courts-Martial, United States, 1984, [hereinafter M.C.M.], paragraph 45c(1)(b). "Acquiesce" is defined "to accept or consent quietly without protesting." *Webster's New World Dictionary,* 13 (1966).

While the drafter's meaning is clear from context, the principle of law is better phrased: "Proof of nonconsent without proof of force, actual or constructive, is no more than a mere acquiescence and does not constitute the crime of rape."

tion had she been so inclined.[4] Furthermore, appellant did not overcome her will through threats of bodily harm, nor is there any other indication that her resistance would have been futile. Nor does the evidence of record establish that S.L.C. was of some peculiar personality type such as would entitle the Government to avail itself of the concept of constructive force under the facts of this case. *See generally United States v. Moore,* 15 M.J. 354 (C.M.A. 1983). As a matter of law, the testimony of S.L.C. establishes nothing more than acquiescence to the act of sexual intercourse.

 The court is well aware that the appellant's initial acts may well constitute the offense of indecent assault. Although proof that acts constituting the offense of indecent assault preceded the act of sexual intercourse might justify an inference that the act of sexual intercourse itself was nonconsensual and the product of the assault, such proof does not *per se* constitute proof that the ultimate act of sexual intercourse was nonconsensual and forcible. *See United States v. Wilson,* 13 M.J. 247 (C.M.A.1982); *United States v. Perry,* 22 M.J. 669 (A.C.M.R.1986). *See also United States v. Bryant,* 420 F.2d 1327 (D.C.Cir. 1969). S.L.C.'s own testimony demonstrates that the act of sexual intercourse in the case at bar was not accomplished through force.

We might find the appellant guilty of the lesser included offense of indecent assault in violation of Article 134 UCMJ, for his initial acts as we noted above.

However, we decline to do so in this case for the reasons set forth in Judge Finklestein's concurring opinion in *United States v. Steele,* 43 C.M.R. 845 (A.C.M.R.1971). While we know a rape was not committed in this case, we are also not satisfied beyond a reasonable doubt that the appellant's initial acts were committed without the consent of the victim.

The appellant's allegation of error raised under *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982), was included in his counsel's allegations of error and duly considered by the court as set forth above.

Accordingly, the finding of guilty of Charge I and its Specification is set aside and that Charge and its Specification are dismissed.[5] The court affirms only so much of the finding of guilty of Additional Charge I and its Specification as finds that the appellant did, at the date, times, and place alleged in the Specification, unlawfully kiss Specialist Lois K. Toering on the lips. The remaining finding of guilty is affirmed.

The sentence is set aside. A rehearing on sentence may be ordered by the same or a different convening authority.

Judge KANE and Judge WERNER concur.

---

4. S.L.C. made no effort to get off the bed, yell, or otherwise draw anyone's attention to her so-called predicament.

5. The court is unable to affirm the Specification of Additional Charge III (adultery) which was dismissed by the military judge on the grounds that it was multiplicious for findings purposes with the Specification of Charge I (Rape) as the military judge failed to enter a finding of guilty or not guilty as to that offense prior to its dismissal.