**UNITED STATES**

v.

**Dorin C. TOWNSEND, Storekeeper First Class, U.S. Coast Guard.**

**CGCM 0048.**
**Docket No. 981.**

U.S. Coast Guard Court of Military Review.

10 March 1992.

Order 9 April 1992.

Trial Counsel: LT Bill Shelton, USCGR.

Assistant Trial Counsel: LT Sharon Fijalka, USCG.

Detailed Defense Counsel: LT James A. Wilson, USCGR.

Assistant Defense Counsel: LT Rosanne Trabocchi, USCGR.

Appellate Government Counsel: LCDR Charles J. Bennardini, USCG.

Appellate Defense Counsel: Michael F. Fasanaro, Jr., Esq.

Appellate Defense Counsel: LCDR G Arthur Robbins, USCG.

Before Panel Two, BAUM, GRACE, and BASTEK, Appellate Military Judges.

BASTEK, Judge:

Appellant was tried by a general court-martial, military judge sitting alone. After pleading not guilty to all charges and specifications, he was convicted of one specification of rape of Seaman B in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920, and one specification of violating a lawful general regulation, Article 8–H–5 of the U.S. Coast Guard Personnel Manual, Commandant Instruction M1000.6A, by having an inappropriate senior/subordinate relationship with Seaman B in violation of Article 92, UCMJ, 10 U.S.C. § 892.

After finding the Appellant guilty, the court sentenced him to confinement for two years, reduction to paygrade E–1, and a dishonorable discharge. The convening authority approved the sentence after considering petitions for clemency submitted by the Appellant and the trial defense counsel.

The Appellant's petition raised the issue of sufficiency of counsel due to the trial defense counsel's failure to present "very important information" about the medical condition of Seaman B. This assertion by the accused was not addressed in the staff judge advocate's R.C.M. 1106 recommendation to the convening authority.

Before this court, Appellant has assigned the following two errors which have also been orally argued:

I

THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO FIND APPELLANT GUILTY OF RAPE BEYOND A REASONABLE DOUBT

II

WHETHER APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE OF COUNSEL'S REMARKS, IN OPEN COURT, WHICH INFERRED HIS DISBELIEF OF APPELLANT'S TESTIMONY

*Assignment of Error I*

THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO FIND APPELLANT GUILTY OF RAPE BEYOND A REASONABLE DOUBT

To prove an allegation of rape, it must be proven beyond a reasonable doubt that:

(a) the accused committed an act of sexual intercourse with a certain female;

(b) the female was not the accused's wife; and

(c) the act of sexual intercourse was done by force and without her consent. Paragraph 45b(1), Part IV, Manual for Courts–Martial (MCM), 1984.

Frequently, these allegations must be proven solely on the basis of the victim's testimony versus the contrary testimony of the accused. In this case, the determinations of lack of consent and use of force are just such issues.

This court has the "[a]wesome, plenary, de novo power of review" to substitute its judgment for that of the military

judge. *U.S. v. Cole*, 31 M.J. 270, 272 (C.M.A.1990). We are required to determine not only the legal sufficiency of the evidence, but also the factual sufficiency. Thus to affirm, we must weigh all the evidence of record, make allowances for not having personally observed the witnesses, and be convinced of the Appellant's guilt beyond a reasonable doubt. *U.S. v. Turner*, 25 M.J. 324 (C.M.A.1987). In this case, we are not so convinced as to the finding on the rape charge.

■ Lack of consent is "more than mere lack of acquiescence." It must be "reasonably manifest by taking such measures of resistance as are called for by the circumstances." It may be inferred, however, if resistance would have been futile, if overcome by threats of death or great bodily harm, or where the victim is unable to resist because of lack of mental or physical faculties. Paragraph 45c(1)(b), MCM, 1984.

■ In *U.S. v. Bonano–Torres*, the Court of Military Appeals specifically approved the language of the Army Court of Military Review on this issue as found in their decision at 29 M.J. 845, 850 (A.C.M.R. 1989):

> The statutory element requires proof of lack of consent *and* force. Because the act of sexual intercourse is itself an element of the offense, the force required is more than that merely incidental to the act of sexual intercourse.... Rather, this element contemplates an application of force to overcome the victim's will and capacity to resist. See *Coker v. Georgia*, 433 U.S. 584, 597, 97 S.Ct. 2861, 2868, 53 L.Ed.2d 982 (1977).

> As a consequence, proof of resistance—or lack thereof—is highly significant in all rape cases where the victim has the capacity to resist. From evidence of resistance, the finder of fact may draw inferences as to the victim's state of mind on the factual issue of consent, *United States v. Williamson*, 24 M.J. 32, 34 (C.M.A.1987), and the accused's state of mind regarding the affirmative defense of mistake of fact. *See, e.g., United States v. Carr*, 18 M.J. 297, 299 (C.M.A.1984).... While resistance is tangentially probative of the issues of consent and mistake of fact, proof of resistance is central to finding the element of force.

*U.S. v. Bonano–Torres*, 31 M.J. 175, 178 (C.M.A.1990). Thus, proof of nonconsent without proof of force is no more than acquiescence and does not constitute the crime of rape.

■ In reviewing the evidence in the light most favorable to the prosecution, Seaman B drove Appellant to their office on her own suggestion; went into the building at the Appellant's invitation; admittedly participated in the first kiss; put her hands on his shoulders and said "Townsend, come on, stop. We can't do this. We'll never be able to look each other in the eyes tomorrow." Appellant put his arm around her waist, kissed her again, and started backing her up the corridor while she continued to ask him to stop; laid her down on the conference room floor and she "froze"; untied her shoe and took her pants off one leg; then penetrated her; after approximately five minutes he said, "This is crazy" and left the room. Seaman B dressed herself and left the office building with Appellant. She waited in the car while Appellant went back in the building for her glasses and then they returned together to the Enlisted Club. Record at 54–60. The Appellant's testimony was somewhat different (Record at 201–205); but, even taking the testimony most favorable to the prosecution, there was little, if any, resistance shown by Seaman B. There was no medical evidence at trial regarding injuries. There was no evidence of threats. While there was a hint of a sexual encounter at an early age which may have caused Seaman B to "freeze," there was insufficient evidence that she was unable to resist due to lack of physical or mental faculties. While there was evidence of the victim saying "no" on several occasions, there was no evidence that further resistance would have been futile. Therefore, lack of consent cannot be inferred and penetration alone does not satisfy the force requirement. This court does not find that Seaman B reasonably manifest her lack of consent by taking such measures of resistance called for under the circumstances. Paragraph 45c(1)(b), MCM, 1984.

A recent Court of Military Appeals decision upheld a conviction of rape in somewhat similar circumstances. In that case, the victim was drunk and led into the accused's office. While the initial kiss was returned, the victim pushed him away and attempted to leave on several occasions but each time was grabbed and returned. The accused pulled her pants down but she pulled them back up. The accused pushed her to the floor where she passed out. The Court, without fact finding power, upheld the Army Court of Military Review finding sufficient force. *U.S. v. Mathai,* 34 M.J. 33 (C.M.A.1992). In this case, however, we must determine the facts. There was no testimony that Seaman B attempted to leave the office, there was no resistance to the removal of her shoe and pants, and there was little resistance to any of his advances. The only "force" applied by the appellant was putting his arm around Seaman B, backing her down the hall, and laying her down on the floor.

When asked why she froze, Seaman B answered "I don't know, I'd said, 'stop' and he wasn't stopping so I—if he just did what he had to do, then he'd—he—he would just leave." Record at 57. As in *Bonano-Torres,* Seaman B's testimony "establishes nothing more than acquiescence to the act of sexual intercourse" which was not "accomplished through force." *Bonano-Torres,* supra at 177. This court disagrees with the military judge's finding that the force element consisted of both physical and psychological force, and we find insufficient evidence to establish the element of force. Therefore, we find merit in the Appellant's first assignment of error. Without the element of force, we are unable to affirm the rape conviction.

### Assignment of Error II

WHETHER APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE OF COUNSEL'S REMARKS, IN OPEN COURT, WHICH INFERRED HIS DISBELIEF OF APPELLANT'S TESTIMONY

On this assignment, the court has considered the petition for clemency from the Appellant to the convening authority; the asserted instance during trial from the appellate defense counsel's brief; the affidavits submitted by the Appellant, trial defense counsel, and assistant trial defense counsel; along with the entire record of trial. *U.S. v. Grostefon,* 12 M.J. 431 (C.M.A.1982). We find trial defense counsel's actions during the entire course of this trial to be effective and conscientious towards the defense of his client.

■ The issue of effectiveness of counsel is a question of law which is resolved by a review of Appellant's alleged errors to determine whether they were so serious that there is a reasonable probability that the outcome would have been different had they not occurred. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *U.S. v. Bono,* 26 M.J. 240 (C.M.A.1988); *U.S. v. Cordes,* 33 M.J. 462 (C.M.A.1991); *U.S. v. Leaver,* 32 M.J. 995 (C.G.C.M.R.1991).

■ Appellant in his clemency petition claimed that counsel failed to properly represent him because he did not bring forth "very important information about the medical report" of Seaman B. The medical reports were presented at the Article 32 investigation which is appended to the record of trial. The testimony regarding Seaman B's medical examination was brought out by Lisa Masters of the rape crisis center in New York. Record at 121. However, no testimony or documentary evidence was given regarding the findings or results of the medical examination. The only follow-up to the examination was the subsequent enrollment in counselling by Seaman B. The trial defense counsel conducted a very succinct cross examination of Ms. Masters bringing out the delay in getting counselling for the victim until just before the Article 32 investigation at the request of trial counsel and pointing out that all clients she saw were agitated. In closing argument he clearly mentioned the lack of medical evidence presented by the government despite the medical examina-

tion. Record at 302. Not highlighting the lack of documentary evidence of the medical examination during the government's case and arguing the deficiency at closing was an appropriate tactic to use. This court reviewed the medical reports attached as part of the Article 32 investigation record and determined that their value could have been viewed as favoring either side in this case. The decision of the trial defense counsel not to offer them was a matter within his sole discretion, was not error, and did not prejudice the outcome of the case.

■ The second area of alleged ineffectiveness stems from the following colloquy from the record at 260–262:

Q. Did you tell anybody, other than your lawyer, when did you first tell your lawyer you couldn't get it up?

DC: Objection, Your Honor.

TC: What's the objection.

DC: Attorney client privilege on that.

TC: Judge, you know, we've been talking about him having an erection, for 2 days now. Of course I'm allowed to explore it.

MJ: What rule are you relying on, Mr. Wilson?

DC: Sir?

MJ: What rule are you relying on?

DC: Just a second, sir. Rule 502 MRE, sir.

MJ: I'll sustain the objection.

Q. Ok, can't talk about what you told your lawyer, but, when did you tell Ross Brown you couldn't get it up, for the first time?

A. I never told him.

Q. Ok, so the first time, Ross Brown, your best friend, heard that you couldn't get it up, was this morning?

A. Yes.

Q. Well, have you talked to your wife about this?

A. No, I did not.

Q. Haven't discussed it with her at all?

A. No, I didn't.

Q. Well, who did you tell, other than your lawyer, that you couldn't get it up?

DC: Objection.

TC: Judge, what's the privilege, if you told somebody other than his lawyer?

MJ: I will overlook, and not consider the statement, "who else did you tell besides your lawyer?"

DC: Sir?

MJ: Ask the question.

DC: I've got a problem with this. He never told me, until he got on the stand there.

TC: Ok, well if he never told you, then you've just released the attorney client privilege. So I can ask him the question. Judge, did he not just waive the privilege when he made that statement?

MJ: Let's just move on, Mr. Shelton. Ask the question, without comments as to when he talked to his lawyer, ok.

TC: Well, I'd like a ruling from the bench. I believe that counsel just waived the attorney client privilege when he just made his last statement.

MJ: I'm not going to allow you to inquire further, as to that aspect.

TC: I don't have anything further.

The experienced military judge in this case clearly stated that he would "overlook and not consider the statement" and did not allow further inquiry along those lines. While the Appellant's credibility was clearly an important issue, this remark during an appropriate objection by counsel is not of such magnitude as to alter the result. The Appellant's testimony gave the military judge ample opportunity to make the specific findings he did regarding the credibility of the Appellant.

■ Lastly on the issue of effectiveness of counsel, the Appellant claims he was unprepared for his trial testimony. The court does not find this argument persuasive in light of the information presented in the affidavits from the trial defense counsel and the assistant trial defense counsel. LT Wilson, the trial defense counsel, discussed the possibility of the Appellant testifying shortly after the Article 32 investigation in this case. He had Appellant prepare a timeline, discussed expected other witness testimony, discussed the

facts Appellant could testify to, reviewed the timeline with Appellant, worked through cross examination with Appellant, and explained the purpose of their work was not to memorize certain responses. The assistant trial defense counsel states that Appellant's testimony was reviewed on several occasions, that Appellant was briefed on his court demeanor and attitude, that Appellant was fully prepared for his in-court testimony, and that Appellant was involved in every aspect of the preparation and presentation of the case. The fact that he may not have come across well as a witness and was specifically found to be not creditable by the military judge on certain issues cannot be laid to the ineffectiveness of his counsel.

The record presents a difficult, factual case tried over a four-day period. The Court of Military Appeals has said that the accused is entitled to a fair trial, not a perfect one, and that the appellate courts should not vacate lightly in the absence of serious incompetence falling measurably below the performance of fallible lawyers. *U.S. v. DiCupe*, 21 M.J. 440 (C.M.A.1986). During the trial, defense counsel argued several motions, successfully challenged two specifications, performed solid cross examinations, called many witnesses in his client's behalf, and made strong closing arguments. His work continued post trial with a request for deferment and an in-depth clemency petition. With all this in mind, the court finds that the Appellant has failed to meet his burden to show that he was denied effective assistance of counsel. Accordingly, his second assignment of error is rejected.

### Action

Here we must note that the Staff Judge Advocate's recommendation under R.C.M. 1106 failed to make mention of the legal error raised in the Appellant's petition for clemency. While no analysis of the alleged legal error is required, a statement must be made regarding agreement or disagreement with the matter raised in accordance with R.C.M. 1106(d)(4), MCM, 1984. This is not a new issue for this court. See *U.S. v. Goodes*, 33 M.J. 888 (C.G.C.M.R.1991).

However, in light of our specific review of this issue and the action we take in this case, appropriate corrective action has been deemed to be taken under R.C.M. 1106(d)(6), MCM, 1984.

▆▆ Notwithstanding our action on the first assignment of error, the evidence in this case fully supports the finding of guilty to a violation of Article 92 for failure to obey a regulation by wrongfully engaging in an improper relationship by having sexual intercourse with a subordinate. This serious breach of military discipline has as a maximum punishment a dishonorable discharge, total forfeitures, and two years confinement. This court will reassess the sentence as appropriate under R.C.M. 1203(b), MCM, 1984.

The findings of guilty of the Specification and Charge I alleging rape are set aside and dismissed. The remaining findings of guilty are affirmed. After reassessment of the sentence in light of the reduced findings of guilty, this court affirms only so much of the sentence approved below as provides for a bad conduct discharge, reduction to E–1 and confinement at hard labor for one year.

BAUM, Chief Judge (concurring).

I write separately only to express the importance to me of certain portions of the alleged victim's testimony in assessing whether the requirements of force and lack of consent have been satisfied. The Manual for Courts–Martial (1984), in discussing this subject, talks about instances in which consent may or may not be inferred and tells us that "[a]ll the surrounding circumstances are to be considered in determining whether a woman gave her consent, or whether she failed or ceased to resist only because of a reasonable fear of death or grievous bodily harm." Paragraph 45c(1)(b), Part IV, MCM, 1984.

In this case, the Government's theory at trial, as supported by the alleged victim's testimony, was that she "failed or ceased to resist" because she "froze" psychologically due to her being sodomized as a child. There undoubtedly are certain women who

become incapacitated in situations of the kind presented in this case. For one reason or another, when faced with unwanted sexual advances, they are powerless to make known their unequivocal opposition to such overtures through physical resistance. The question for me is whether Seaman B is that kind of woman. Her own testimony at trial convinces me that she is not.

Seaman B testified that she offered to drive the accused from the enlisted club to his office at 10 p.m. so he could get a clean shirt and call his wife; that she borrowed a girlfriend's car for that purpose; that instead of remaining in the car, she accompanied the accused to his office knowing there would be no one else there; and that when they were alone, after calling his wife, the accused initiated a kiss in which Seaman B participated. At this point, after he had french-kissed her, she said, "Townsend, come on, stop. We can't do this. We'll never be able to look each other in the eyes tomorrow." Instead of stopping, however, he put his arm around her waist and walked her backwards fifty to seventy feet down a corridor to a conference room where he said, "Lay down," at which point, according to Seaman B, "I froze. I didn't do anything. He bent me over backwards, and said, 'Lay down.' At which point, I just froze." In response to the trial counsel's question, "Why?", Seaman B said, "I don't know, I'd said, 'stop' and he wasn't stopping so I—if he just did what he had to do, then he'd—he—he would just leave."

Thereafter, according to her testimony, he untied one of her high-top sneakers, took the shoe off, slipped one leg out of her pants, undid his pants and entered her. After about five minutes, "He got up and he said, 'This is crazy' then he left the room." Seaman B put her pants and sneaker back on and when she came out of the office, he was there and they left. When they got downstairs, she said, "My glasses," so he took the keys and went back upstairs to get her glasses. She waited for him and after he returned, she testified, "I just told him that if he said anything, to Ross [his buddy] or anybody, that

I would rip his dick off and put it in his ear." Record at 53–60.

According to the Manual for Courts–Martial, "If a woman in possession of her mental and physical faculties fails to make her lack of consent reasonably manifest by taking such measures of resistance as are called for by the circumstances, the inference may be drawn that she did consent." Paragraph 45c(1)(b), Part IV, MCM, 1984. Seaman B's words and actions do not convince me that she is the type of woman who was unable to resist because of a lack of mental or physical faculties, nor do I believe she was overpowered psychologically. Applying the Manual for Courts–Martial standard, I am not convinced beyond a reasonable doubt by the evidence of record that the accused committed an act of sexual intercourse with Seaman B by force and without her consent. Accordingly, I concur in setting aside the conviction of rape.

The other offense of wrongfully engaging in an improper relationship by having sexual intercourse with a subordinate is fully established by the evidence. It is a breach of regulations with an extremely detrimental effect on military good order and discipline. Upon reassessment of the sentence in light of this one offense, I concur in affirming the reduced sentence of a bad conduct discharge, confinement for one year and reduction to E–1.

GRACE, Judge (concurring).

After my complete review of the record of this trial, I am left with lingering doubts about the guilt of the accused as to the charge of rape. I have read and reread the testimony of Seaman B, the alleged victim, and Petty Officer Townsend, the Appellant. I have made allowances for the fact that I did not see the witnesses testify in person. I have weighed the fact that the military judge stated on the record that he found the alleged victim believable and the Appellant unbelievable. The testimony of the Appellant and Seaman B are not that inconsistent. Their testimonies are in agreement in most aspects except for one critical fact; that of consent to the sexual intercourse. She testified that she resisted,

said "no", and later froze. He claimed there was no resistance and willing participation. I feel it is possible that, in their minds, each is telling the truth. I am not a psychologist and, therefore, not qualified to make judgments about how a rape victim might react to being sexually attacked. No evidence about that was presented at trial. I was struck by actions by both the accused and the alleged victim that seemed inconsistent with a rape; a shoe that was untied rather than pulled off, no evidence of tearing of clothes, the victim waiting while Townsend went back for her glasses, the efforts by the Appellant to "mediate" the incident in the following days. None of these factors in themselves are dispositive of the issue of consent, but they add to the doubt I hold. Lack of physical evidence of force and questions of psychological force also enter the equation. When everything has been weighed in the balance I cannot say that I have been convinced beyond a reasonable doubt of the guilt of the accused as to the charge of rape. Therefore, I concur with Judge Bastek in setting aside the conviction of rape.

I also concur in affirming the remaining findings of guilty and the sentence as reassessed.

## APPELLEE'S MOTION TO FILE FOR RECONSIDERATION OUT OF TIME FILED WITH THE COURT ON 7 APRIL 1992

### ORDER—PANEL TWO

On consideration of Appellee's Motion to File for Reconsideration Out of Time, in the above-styled case, filed with the Court in accordance with Rules 19 and 23 of the Courts of Military Review Rules of Practice and Procedure, it is, by the Court, this 9th day of April 1992;

ORDERED:

That Appellee's Motion to File for Reconsideration Out of Time, having failed to offer a reason for not moving for reconsideration within the 20 days called for by Rule 19(b) or providing any basis for this Court's concluding that there is good cause for extending the time limitations for such filing, is hereby denied.

The Motion for Reconsideration asserts that this Court's opinion of 10 March 1992 explaining the decision to set aside the finding of guilty of rape and affirm only the finding of guilty of violating a lawful general regulation injects uncertainty into the law of rape and leaves unanswered questions concerning the lesser included offense of indecent assault. In light of the Government's quest for clarification, an explicit restatement of this Court's earlier decision is deemed warranted.

All the surrounding circumstances revealed by the evidence of record were considered in determining whether the alleged victim gave her consent to the acts alleged and whether the element of force was established. The Court was not convinced beyond a reasonable doubt that either of those elements was established. In reaching this conclusion, permissible inferences were drawn from a determination that the alleged victim failed to make lack of consent reasonably manifest by taking such measures of resistance as called for by the circumstances. The failure of proof with respect to lack of consent applied equally to the lesser included offense of indecent assault and, accordingly, did not warrant discussion.