OPINION OF THE COURT
CREAN, Senior Judge:
Contrary to Ms pleas, the appellant was found guilty, by a general court-martial composed of officer and enlisted members, of disobedience of a regulation, rape, two specifications of forcible sodomy, communication of a threat, indecent language, and disrespect to an officer, in violation of Articles 89, 92, 120, 125, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 889, 892, 920, 925, and 934 (1988) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for ten years, forfeiture of all pay and allowances, and reduction to Private El.
The appellant asserts, inter alia, that the evidence is legally and factually insufficient to support the findings of guilty of rape, forcible sodomy, indecent language, and eommumcation of a threat. We disagree and affirm.
The incident that gave rise to the sexual, indecent language, and communication of a threat charges against the appellant occurred on the night of 18 December 1992 with Private E2 (PV2) H. The appellant and PV2 H were students in the same licensed practical nurse course. Phase 1 of the course was held at Fort Sam Houston, Texas. The appellant was one of the class leaders for that phase. Phase 2 was held at Fitzsimons Army Hospital, Colorado, but the appellant had been removed as one of the class leaders. The appellant was a thirty-eight year-old sergeant and PV2 H was a mneteen year-old female private. The only testimony in the case concerning the incident was given by PV2 H.
On the night of 17 December 1992, the appellant and PV2 H attended the same dinner party at the home of a fellow student. They did not go to the dinner party together but attended separately. Private H left the party early with another female student and returned to the barracks. The next day, 18 December 1992, the appellant told PV2 H during class that he was “going to have her” or “get her” that mght. That evemng after class, PV2 H went to dinner and then shopping with other soldiers, returning to her barracks room at approximately 2230. She changed clothes and went to bed.
Shortly before midnight and before falling asleep, PV2 H heard a loud knock on her door. She put her clothes on and answered the door without cheeking to see who was at the door. The appellant entered the room and asked her why she had left the party early the mght before, because he wanted to “fuck her brains out at his apartment.” Private H told the appellant to leave, that sergeants were not to be in the barracks, and that the Charge of Quarters (CQ) would be coming through the barracks soon. The appellant responded that he did not care and that he was going to “fuck her and make love to her.” The appellant was standing in the middle of the room and PV2 H was standing by the door. The appellant told her in a very loud voice, addressing her as Private H, to lock the door and close the shutters. She complied because she was afraid of him.
The appellant started to remove Ms clothes. He twice told PV2 H to take her clothes off and she twice refused. The appellant then yelled at her that “You need to take your clothes off, now.” She started then to remove her clothes and he came over to help her.
After PV2 H’s clothes were removed, the appellant grabbed her by the arm and pulled her to the bed on top of him. He told her to place his penis in her vagina. She told him no and that she never had sex that way. He asked her if he had to show her everything and then he placed his perns in her vagina. The appellant kept asking her about her sex life. He told her that she was going to be his and have sex with him the remainder of their course. The appellant kept on telling PV2 H what sexual act to do and told her to “shut up” when she talked too loud in answering his questions.
The appellant asked her, “Have you ever sucked cock?” When she told him no, he told her to “suck his cock.” The appellant took her head and pulled it towards him until *596 she placed his penis in her mouth. After PV2 H performed fellatio, the appellant got on top of PV2 H and told her to place his penis in her vagina. Private H did what he told her because she did not know what else to do. At his insistence, she again performed fellatio on him.
During this entire time, PV2 H told the appellant that she did not want to have sex with him and that what they were doing was wrong. The appellant responded that he was going to teach her how to have sex. He told her that he wanted her for “breakfast, lunch, and dinner.” He told her to promise that she would have sex with him, and every time she told him no, he slapped her on her buttocks.
The appellant asked PV2 H if she ever had anal sex. She told him no. The appellant rolled her on to her stomach and told her to help him place his penis in her anus. She did as he told her but the act hurt her. She was able to turn around and tell the appellant to stop because it hurt too much. The appellant then stopped.
The appellant finally let PV2 H get off the bed when she promised to visit him. The appellant told her she better not lie because his family was in the mafia and he would kill her. After getting up from the bed, PV2 H put her clothes on and went to the bathroom. When PV2 H left the bathroom, the appellant was still on the bed naked. He tried to get her back on the bed but she was able to stop him. He told her to call him a cab and she did so. The appellant forced her to escort him to the door of the barracks to get the cab. The appellant kept a hold on her and told her that she should not tell anyone of the events of that evening or he would kill her.
The next day, the appellant left for home on Christmas leave. When PV2 H returned on 2 January 1993, she told two friends in her class about the incident with the appellant. They persuaded her to make a report to the military police.
Private H testified that during the entire encounter she was afraid of the appellant. She admitted that the appellant did not hurt her, order her as a private to have sex with him, or brandish a weapon. She did not hurt the appellant while performing fellatio, did not scream or yell out, and did not leave the room when she was close to the door. She did repeatedly tell the appellant that she did not want to have sex with him. Since this was the night before the start of the holiday leave, her roommate and squad leader had left the barracks, and most of the rooms on her floor of the barracks were empty. She knew, however, that some of her friends were still in the building. The CQ was not located in the building but in another building a few hundred meters away.
The test for legal sufficiency of the evidence is whether considering the evidence in the light most favorable to the government, the trier of fact could rationally find the existence of every element of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); United States v. Blocker, 32 M.J. 281, 284 (C.M.A.1991). The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, this court is itself convinced of appellant’s guilt beyond a reasonable doubt. Article 66(c), UCMJ; United States v. Turner, 25 M.J. 324 (C.M.A. 1987).
The offenses of rape and forcible sodomy both require that an accused commit an act of sexual intercourse or unnatural carnal copulation by force and without consent. Manual for Courts-Martial, United States, 1984, Part IV, paras. 45b and 51(b) [hereinafter M.C.M.1984]. If the alleged victim does not make her lack of consent “reasonably manifest by taking such measures of resistance as are called for by the circumstances, the inference may be drawn that she did consent.” M.C.M.1984, para. 45c(l)(b). Even if there is a true lack of consent, if the accused had an honest and reasonable belief that the alleged victim was in fact consenting to the sexual activity, he cannot be convicted of rape or forcible sodomy. Rule for Courts-Martial 916(j).
There is no question that the evidence is legally sufficient to support the findings of guilty. Based on the testimony of the *597 victim, a trier of fact could rationally find the existence of every element of the offenses. The issue is whether the evidence is factually sufficient for this court to find, beyond a reasonable doubt, that the acts were committed by force and without consent. This case is not one of date rape. Several recent military eases that are factually similar to this case have discussed the issue of force and lack of consent.
The United States Court of Military Appeals affirmed a decision of this court finding that the evidence did not establish that there was a lack of consent and force. United States v. Bonano-Torres, 31 M.J. 175 (C.M.A.1990) (victim’s testimony established acquiescence to the act of sexual intercourse and no force). Our fellow judges on the Coast Guard Court of Military Review have split on whether the facts of similar cases support findings of rape. See United States v. Townsend, 34 M.J. 882 (C.G.C.M.R.1992) (facts only establish acquiescence to the act of sexual intercourse where the victim voluntarily went with the accused to an office building, participated in kissing, and the only force used was to put an arm around the victim to back her down a hallway and lay her down on the floor) and United States v. Webster, 37 M.J. 670 (C.G.C.M.R.1993) (sufficient facts to find force and lack of consent even though the victim held hands and kissed the accused but told the accused no to further advances, broke off physical contact, went to the kitchen, and continued to tell the accused no to sexual advances). The findings by Courts of Military Review of lack of consent and force are often close calls. Based on the totality of the circumstances, we must find that the charged sexual acts were done by force and without consent. United States v. Bonano-Torres, 31 M.J. at 179.
In this case, there was no dating involved and only a slight acquaintance because they were in the same class. The victim was a nineteen year-old private new to the Army and the accused was a thirty-eight year-old sergeant who had been her superior at one time. The accused manifested to the victim his intent to have sexual intercourse with her. The accused came to the victim’s barracks room late in the evening uninvited after she was trying to sleep. The victim told the accused to leave her room. The words he spoke to her are not those that normally would induce consensual sexual relations from a mere acquaintance. We find no evidence that the appellant was so irresistible that he could sweep this victim off her feet to have sexual relations just because he wanted to “have her.” He frightened her and threatened to kill her. He told her three times to undress and pulled her on top of him onto the bed. She repeatedly told him she did not want to have sexual intercourse. He pulled her head to his penis to commit fellatio. He turned her over to anally penetrate her. While she could have tried to leave the room or could have screamed, these factors do not mean that she acquiesced in the sexual acts. Her actions do show a continued lack of consent, and the accused had to use force more than incidental to the sexual acts. There could not be a honest or reasonable mistake of fact that the victim consented or the accused would not have had to threaten her with death or action by the mafia. Under the totality of these circumstances, we are convinced beyond a reasonable doubt that the acts of sexual intercourse and unnatural carnal copulation were done by force and without the consent of the victim. Accordingly, we hold that the evidence is factually sufficient to support the findings of guilty.
We have carefully considered the other assertions of error whether raised through counsel or personally by appellant pursuant to United States v. Grostefon, 12 M.J. 431 (C.M.A.1982), and find them without merit.
The findings of guilty and the sentence are affirmed.
Judge MORGAN and Judge GONZALES concur.